CLARENCE ALDON BODINE, Plaintiff-Appellee, v. JOAN ELIZABETH BODINE, a/k/a Joan Elizabeth Meginnes, Defendant-Appellant.

Third District   No. 3—85—0461

Opinion filed February 20, 1986.

Susan Dawson-Tibbits, of Prairie State Legal Services, of Peoria, for appellant.

Gary T. Rafool and Cheryl A. Dunlavey, both of Lynch & Bloom, of Peoria, for appellee.

22

JUSTICE HEIPLE delivered the opinion of the court:

This is the second appeal in this support enforcement action. Our first opinion (127 Ill. App. 3d 492, 468 N.E.2d 1004) provides a complete account of the operative facts. Only those facts necessary to the resolution of this appeal will be set forth.

Pursuant to the original judgment of dissolution Clarence Bodine (Clarence) was required to make payments on a trailer occupied by Joan Bodine (Joan) until it was paid off. Thereafter, the payments would be $20/week per minor child. Two children were born of this marriage.

In early 1977, Joan asked Clarence to consent to an adoption of the children by herself and her new husband. Clarence executed the consent after appearing *ex parte* before a judge. The judge informed Clarence that his consent was irrevocable and terminated all rights and responsibilities relative to the children.

In late 1977, Joan telephoned Clarence to inform him that the adoption had not gone through. The older boy had expressed resistance and his mother and stepfather accepted his decision. While the nature of the call is undisputed, the parties differ over whether it was made clear to Clarence that there would never be an adoption.

On January 1, 1978, the trailer was paid off, thus triggering the monetary support obligations of the dissolution judgment. Joan never made a demand for payment as such, although there was a conversation in which she asked in a roundabout way for money for the older child. It also appears that Clarence did not seek visitation with the children following his execution of the consent to adoption. On February 5, 1979, Joan commenced a criminal nonsupport action against Clarence.

In the first trial of this cause, the court ruled that Clarence was not obligated to Joan based on an alleged agreement to forego support in return for a waiver of visitation rights and the consent to adoption. We reversed on appeal, but remanded for a determination of whether Joan should be estopped from collecting back support.

The trial court on remand heard much of the same testimony as recounted above. Joan testified to the 1977 phone call informing Clarence that the adoption had not gone through. She further testified to subsequent calls in 1978 in which it was made clear that the adoption had not as yet occurred. Clarence testified that when he went before the judge on the consent to adoption, it was made quite clear that his execution of the consent would irrevocably terminate his relationship with the children. The trial court ruled that Joan was estopped from collecting support from January 1, 1978, through February 5, 1979,

and reduced the stipulated arrearage accordingly.

Joan argues that the estoppel defense was not proved by clear and convincing evidence. She first contends that there was no evidence of detrimental reliance on Clarence's part. The evidence suggests that Clarence reduced his visitation to some extent upon Joan's remarriage. However, it is clear that he did not consciously decide to quit seeing his children altogether until he executed the consent to adoption. The evidence supports the trial court's finding that the termination of visitation constituted detrimental reliance.

We also believe that the evidence supports the finding that Clarence's reasonable reliance on the consent to adoption did not cease until the service of the support enforcement petition. Joan's own testimony reveals that while Clarence knew the adoption had not gone as planned, there was nothing to suggest that Joan and her new husband had abandoned the idea. Hence, there was nothing to dissuade Clarence from believing that his irrevocable waiver of parental rights was not still in force. The court correctly found that the petition of February 5, 1979, should have adequately informed Clarence, or at least have triggered further investigation. This investigation, with the aid of counsel, would have revealed that there was not, nor would there be, an order terminating parental rights and responsibilities pursuant to section 17 of the Adoption Act (Ill. Rev. Stat. 1981, ch. 40, par. 1521).

Joan asserts that estoppel is not applicable because she neither engaged in conduct nor made any statements which caused Clarence to forego his visitation rights. She points out that it was the judge at the consent proceedings who made the statements upon which Clarence relied.

This argument is without merit. The statements made by the judge, as well as those contained in the standard consent form, are all part and parcel of a proceeding instituted by Joan. While the statements made did not emanate directly from the party against whom the estoppel is asserted, they were made by another as the inevitable result of the conduct of said party. This distinguishes the instant case from *Willowbrook Development Corp. v. Pollution Control Board* (1981), 92 Ill. App. 3d 1074, 416 N.E.2d 385, which is cited in Joan's brief. There, the statements relied on by plaintiff were made by a third party not directly related to the controversy between Willowbrook and the EPA. There was nothing to suggest that the conduct of EPA in any way caused the third party to mislead Willowbrook.

Furthermore, since we may affirm the judgment for any rea-

son apparent from the record, we find that Joan could be estopped by her silence. Silence may constitute conduct inducing detrimental reliance if there is a duty to speak (*Town & Country Bank v. James M. Canfield Contracting Co.* (1977), 55 Ill. App. 3d 91, 370 N.E.2d 630). Here, it is readily inferred from the record that Joan was or should have been aware that Clarence had stopped seeing his children because of the consent to adoption. In that case, it was her duty to inform him in no uncertain terms that there would be no adoption, that he could begin seeing his children again, and that he should start paying support. Because she did not so inform Clarence until February 1979, her silence contributed to Clarence's harboring a misconception concerning his parental rights and responsibilities. This failure to speak alone might well constitute a legitimate estoppel.

Accordingly, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

SCOTT, P.J., and WOMBACHER, J., concur.