UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Appellant, v. CONTINENTAL CASUALTY COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—88—0009

Opinion filed May 14, 1990.

Kiesler & Berman, of Chicago (Robert L. Kiesler and David J. Kiesler, of counsel), for appellant.

Haskell & Perrin, of Chicago (Stephen Sonderby, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, United States Fidelity and Guaranty Company (USF&G), a primary insurer, appeals from the dismissal of its amended complaint filed against defendant, Continental Casualty Company (CNA),

excess insurer, seeking a declaratory judgment as to its rights to recover the amount it had expended for settlement purposes allegedly in excess of the primary limits of its policy. The underlying cause of action which precipitated USF&G's declaratory action concerns a lawsuit filed by Gustaf Brehmer and his wife against St. Anne's Hospital on November 12, 1979, seeking damages for injuries sustained by Brehmer, an employee of A.J. Maggio Co. (Maggio), while he was doing construction work at St. Anne's. On appeal, USF&G contends that: (1) the original complaint, reinstated to supplement the amended complaint, properly stated a cause of action for equitable contribution or apportionment; (2) count I of the amended complaint properly stated a cause of action for breach of contract implied in law; (3) count II of the amended complaint properly stated a cause of action for breach of contract implied in fact; and (4) count III of the amended complaint properly set forth a theory of equitable estoppel which precludes CNA from relying on the dismissal of the third-party action as a defense. For the following reasons, the judgment of the trial court is affirmed.

Prior to the Brehmer lawsuit, USF&G had issued two insurance policies to Maggio: (1) a workers' compensation policy (Workers' Policy) covering the period of June 30, 1975, through June 29, 1980, and (2) a general liability policy (General Policy) covering the period from June 30, 1979, through June 29, 1980. Each policy had a liability limit of $500,000. The General Policy included an endorsement naming St. Anne's as an additional insured,[1] "but only with respect to liability out of operations performed" for St. Anne's by Maggio. Pursuant to the terms of the General Policy, the $500,000 liability limit would be reduced by any amount paid as damages on behalf of either Maggio or St. Anne's. The Workers' Policy covered only Maggio.

On January 17, 1980, CNA had issued an umbrella excess third-party liability policy (Excess Policy) in favor of Maggio with a liability limit of $5 million. The Excess Policy allegedly protected Maggio against any claim by St. Anne's and protected St. Anne's against any claim arising from work performed by Maggio at the St. Anne's work site. A copy of the Excess Policy was not included in the record for this court's review.

Following Brehmer's lawsuit, St. Anne's filed a four-count third-

---

[1] The endorsement indicates that the additional insured is Little Sisters of the Poor, North Side Chicago, Inc. The record does not explain the connection between this organization and St. Anne's. However, both parties refer to St. Anne's as the additional insured.

party complaint against Maggio, seeking contribution or indemnification from Maggio in the event St. Anne's was found liable in the Brehmer action.

Pursuant to the Workers' Policy, USF&G paid Brehmer's workers' compensation claim and, therefore, had a subrogated interest as to this amount. Subsequently, on August 2, 1984, the parties to the Brehmer lawsuit reached a settlement in the amount of $2,225,000. In addition, the workers' compensation lien was compromised to a sum of $225,000, which sum was allocated to the ultimate settlement by way of forgiveness of the debt by USF&G in favor of Brehmer. On September 24, 1984, an order was entered on Brehmer's motion compelling defendants to tender their settlement checks and releases in connection with the settlement entered into on August 2, 1984. The order was entered *nunc pro tunc* to August 2, 1984. As a result, USF&G paid $775,000, CNA paid $125,000, and USF&G forgave its workers' compensation lien of $225,000. The balance was paid by the remaining defendants, who are not parties to this appeal.

Subsequently, in an order entered January 7, 1985, the trial court granted Maggio's motion to vacate the order of September 24, 1984, dismissed all counterclaims and third-party actions, and restated the settlement amount as $2,450,000, with $225,000 of that amount being attributed to USF&G's forgiveness of the workers' compensation lien.

On July 8, 1986, USF&G filed its declaratory judgment action against CNA. USF&G alleged that the settlement had been predicated on the agreement between itself and CNA that Brehmer's injuries were the fault of only Maggio and that no fault was to be attributed to St. Anne's. USF&G admitted that it had a duty to indemnify Maggio up to the amount of $500,000 under the Workers' Policy. However, USF&G claimed that any excess payment over that amount should have been paid by CNA pursuant to the Excess Policy. Therefore, USF&G sought a declaration that CNA owed it $500,000 plus interest. As an alternative argument, USF&G argued that if St. Anne's were found to have been liable for Brehmer's injuries, then St. Anne's would be entitled to contribution from Maggio, which should be paid by CNA pursuant to its Excess Policy.

In response, CNA moved to dismiss on the grounds that any determination of liability as between St. Anne's and Maggio was waived by the settlement and the concomitant dismissal with prejudice of St. Anne's third-party complaint against Maggio. The trial court granted CNA's motion to dismiss for failure to state a cause of action and granted USF&G 45 days to file an amended complaint.

USF&G's two-count amended complaint, filed October 1, 1987, al-

leged breach of contract implied at law and, alternatively, breach of contract implied in fact. Subsequently, USF&G moved to reinstate its original complaint to supplement the amended counts. The trial court granted reinstatement, then dismissed USF&G's amended complaint. This appeal followed.

▉ Initially, USF&G contends that its complaint had stated a sufficient cause of action for equitable contribution or apportionment from CNA for that portion of the settlement which exceeded the liability limits of USF&G's Workers' Policy and which CNA was contractually obligated to pay under the terms of its Excess Policy. USF&G's argument fails for two reasons.

First, in order to determine whether CNA is "contractually obligated" to pay a sum under its Excess Policy, a determination has to be made as to the degrees of liability between St. Anne's and Maggio. This determination was never made by the trial court. Instead, the third-party complaint filed by St. Anne's against Maggio was dismissed with prejudice at the time the settlement order was entered.

Pursuant to USF&G's complaint, Maggio and St. Anne's had agreed to pay Brehmer $1,125,000 of the settlement amount. However, there is no breakdown of that amount as to the liability between Maggio and St. Anne's. USF&G paid $1 million and CNA paid $125,000. In its reply brief, USF&G admits that $500,000 of the $1 million it paid came from the Workers' Policy which insured Maggio, and the remaining $500,000 was from the General Policy which named St. Anne's as an additional insured. Each of these amounts represented the maximum liability on each policy. Thus, by USF&G's own admission, it had paid within the liability limits of the two relevant policies. However, USF&G now claims that the $500,000 paid under the General Policy was not in recognition of any liability on the part of St. Anne's. Rather, it was paid with the intention that the amount would be reimbursed by CNA under the Excess Policy insuring Maggio, in recognition that Maggio was 100% liable.

Contrary to USF&G's argument, the settlement conforms to the primary and excess insurer obligations of USF&G and CNA, respectively, i.e., CNA's obligations are triggered when USF&G's liability limits are reached. That portion of the settlement attributed to Maggio and St. Anne's was $1,125,000. USF&G's total liability limitation under its two policies insuring Maggio and St. Anne's was $1 million. USF&G paid that amount and CNA, pursuant to its Excess Policy, paid the excess amount of $125,000. In order to agree with USF&G's position that the settlement obligation should have been distributed differently as between USF&G and CNA, a determination as to the

degree of liability attributed to Maggio and St. Anne's would have had to have been made by the trial court. USF&G argues that "clearly" St. Anne's liability, if any, would be technical and secondary and St. Anne's would "undoubtedly" be able to pass most, if not all, of its liability on to Maggio. This is not a determination to be made on appeal.

■ The second reason this argument fails is that the doctrine of equitable contribution does not apply to primary/excess insurer issues. USF&G correctly argues that this court has recognized the doctrine of equitable contribution in insurance situations. However, in insurance law, contribution arises among co-insurers where there is an identity between the policies as to parties and insurable interests and risks. (*Royal Globe Insurance Co. v. Aetna Insurance Co.* (1980), 82 Ill. App. 3d 1003, 403 N.E.2d 680; *Zurich Insurance Co. v. Raymark Industries, Inc.* (1986), 145 Ill. App. 3d 175, 494 N.E.2d 634.) This court has expressly recognized that differences exist between the "unique and special coverage" of an excess policy and a primary policy. (*Illinois Emcasco Insurance Co. v. Continental Casualty Co.* (1985), 139 Ill. App. 3d 130, 487 N.E.2d 110.) By definition, the policies do not cover the same risks, *i.e.*, when the protections of the primary policy cease, the protections under the excess policy commence. See also *Pekin Insurance Co. v. Cincinnati Insurance Co.* (1987), 157 Ill. App. 3d 404, 510 N.E.2d 524.

■ ■ USF&G further argues that the dismissal of the third-party complaint does not bar USF&G's action for declaratory judgment. Initially, USF&G asserts that its position is grounded in equity, not the Illinois Contribution Act, and that the trial court erred in analyzing the facts with respect to the Act. USF&G correctly argues that "An Act in relation to contribution among joint tortfeasors" (the Act) (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*) does not apply to the facts at bar. The Act specifically applies to joint tortfeasors and not to a declaratory judgment action between insurers of those tortfeasors. However, section 2(f) of the Act does indicate that anyone who has made a settlement payment on behalf of a tortfeasor is subrogated to the tortfeasor's right of contribution. Thus, section 2(f) reinforces the fact that there must be a liability determination as between the joint tortfeasors, *i.e.*, Maggio and St. Anne's, before the obligations of the insurers can be determined.

USF&G further claims that, in its declaratory action, it was not trying to alter or to affect the legal relationship between Brehmer, Maggio and St. Anne's; it merely sought a determination of Maggio's and St. Anne's relative culpability. USF&G claims that the latter determination would only affect USF&G's and CNA's rights and obliga-

tions, and would have no legal impact on Maggio and St. Anne's. In our view, this is a distinction without a difference. A determination of USF&G's and CNA's rights and obligations is an indirect determination of Maggio's and St. Anne's relative culpability.

Next, USF&G contends that its amended complaint for declaratory judgment properly stated a cause of action for breach of contract implied in law. USF&G argues that by contributing $500,000 in excess of its Workers' Policy liability limits to the settlement, it rendered indemnification services for and on behalf of CNA and satisfied CNA's contractual obligations to Maggio. In response, CNA argues that USF&G failed to plead facts showing or giving rise to a reasonable inference that CNA had ever accepted or acknowledged that a benefit had been conferred on CNA by USF&G when it paid the liability limits of its Workers' Policy and its General Policy to settle a claim against two of its insureds.

■ It is well established that a cause of action for breach of contract implied in law must allege that one party knowingly and voluntarily received benefits from another; that the benefits were related to an obligation or duty of the recipient; and that it would be inequitable for the recipient to retain the benefits without payment. (*Hartman v. Townsend* (1988), 169 Ill. App. 3d 111, 117, 523 N.E.2d 199, citing *Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 875, 400 N.E.2d 614; *Elliot v. Villa Park Trust & Savings Bank* (1978), 63 Ill. App. 3d 714, 380 N.E.2d 507.) To be factually sufficient, a complaint must plead substantial allegations of fact which bring the claim within the legally recognized cause of action. (Ill. Rev. Stat. 1987, ch. 110, par. 2—601.) For purposes of a motion to dismiss, all well-pled facts are to be taken as true. Conclusions of law and facts which are not supported by allegations of specific facts are not considered to be well-pled facts and are not admitted by a motion to dismiss. *Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 444 N.E.2d 657.

■ In the present case, USF&G's cause of action for breach of an implied-in-law contract is predicated upon conclusions of law which do not support the cause of action. Specifically, USF&G alleges that the underlying settlement was based on facts which indicated fault on Maggio's part and no fault on St. Anne's part; that St. Anne had a right to pass its entire liability onto Maggio; and that any amount over $500,000 should have been paid by CNA. The first two stated allegations assume that liability as between Maggio and St. Anne's has been determined. As previously discussed, the third-party complaint, originally filed to determine the proportion of liability, was dismissed with

prejudice. The final allegation that CNA is responsible for any amount in excess of $500,000 is a determination for the court to make, not for USF&G to allege.

As indicated, USF&G has failed to allege well-pled facts to support two essential requirements to an action for breach of an implied-in-law contract: that CNA had had any obligation or duty to pay the excess or that it was inequitable for CNA to have paid only $125,000 of the settlement. Accordingly, the trial court properly dismissed count I, which alleged breach of an implied-in-law contract.

■ Next, USF&G contends that count II of its amended complaint properly stated a cause of action for breach of a contract implied in fact. Pursuant to Illinois law, an implied-in-fact contract is one which imposes a contractual duty by reason of a promissory expression which may be inferred from the facts, circumstances, and promissor's expressions that the promissor intends to be bound. (*In re Estate of Milborn* (1984), 122 Ill. App. 3d 688, 461 N.E.2d 1075.) Essentially, USF&G claims that an implied-in-fact contract was established at the settlement conference by CNA's failure to respond to USF&G's alleged statements that it was not making payment as a volunteer and by CNA's alleged acknowledgement that USF&G was going to file a declaratory judgment action to determine the parties' liability.

■ In response, CNA argues that USF&G failed to state a cause of action for breach of an implied-in-fact contract by not including allegations of any mutuality of understanding as to terms, consideration or duration of the implied agreement. CNA cites to *In re Estate of Milborn* (1984), 122 Ill. App. 3d 688, 461 N.E.2d 1075, as support for its position. In *Milborn*, plaintiffs filed claims against decedent's estate, seeking $5,000 for services performed for decedent. The evidence at trial consisted solely of the plaintiffs' testimony, stating that for the previous five years, plaintiffs had prepared the decedent's meals, cleaned her house, did most of her laundry, made sure she took her medicine, maintained her lawn and house, and provided necessary transportation. In addition, during the last few months of decedent's life, one of the plaintiffs had been given a power of attorney which authorized him to handle the decedent's financial matters. Both plaintiffs testified that they had expected to be compensated. The trial court found that plaintiffs had established an implied contract, but neglected to state which kind. On appeal, the reviewing court held that an implied-in-fact contract had not been established on the grounds that the record did not reveal any specific acts, conduct, or circumstances which would infer a promissory expression or intent to be bound and there was no evidence of a mutual understanding between

the parties or of the implied terms of the alleged agreement.

Similarly, in the present case, USF&G's amended complaint fails to reveal any acts, conduct or circumstances at the settlement conference which would infer CNA's intent to be bound to any further distribution of liability. The fact that CNA acknowledged USF&G's intention to file a declaratory action is nothing more than an acknowledgement. CNA did not promise that it would not move to dismiss the action or that it would pay an increased share of the settlement. Moreover, USF&G's allegations as to what had transpired at the settlement conference are merely conclusions of fact without any supporting factual allegations. As such, they do not support a cause of action for breach of an implied-in-fact contract. See *Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 444 N.E.2d 657.

■ Finally, USF&G contends that count III of its amended complaint sufficiently alleged equitable estoppel, thereby precluding CNA from relying on the dismissal of the third-party complaint as a defense. In order to sufficiently state a cause of action for equitable estoppel, the following elements must be alleged: (1) the party against whom estoppel is asserted must, by word or conduct, have misrepresented material facts; (2) the party against whom estoppel is asserted must have known that the misrepresentations were untrue; (3) the party claiming benefit of estoppel must not have known that the misrepresentations were untrue; (4) the party against whom estoppel is asserted must have intended or expected that his or her misrepresentations would be acted upon by the party claiming benefit of estoppel; (5) the party claiming benefit of estoppel must have relied or acted upon the misrepresentations; and (6) the party claiming benefit of estoppel must be in a position of prejudice if the party against whom estoppel is asserted is permitted to deny the truth. *American Savings Association v. Conrath* (1984), 123 Ill. App. 3d 140, 462 N.E.2d 849.

■ In count III of its amended complaint, USF&G alleged that during the settlement conference, it had made repeated references to the issue of USF&G's and CNA's relative liability, that it had expressly indicated it would be filing a declaratory judgment action against CNA in the event USF&G had to pay more than its pro-rata share, and that USF&G was not making payment as a volunteer. In addition, USF&G alleged that the trial court stated that USF&G and CNA would have to "straighten out" the apportionment issue and that it did not know how a settlement order could have any effect on that issue. USF&G then alleged that CNA had made no objections to the statements made during the settlement conference and had acknowledged the fact that USF&G intended to file a declaratory judgment action. Based on this

conduct by CNA, USF&G alleged that it had changed its position for the worse by having the third-party action dismissed, which it would not have done but for CNA's representations that it would litigate the parties' respective degrees of liability.

In essence, USF&G is attempting to blame CNA for its procedural error in dismissing the third-party complaint with prejudice. Without a determination as to the issue raised in that complaint, a determination as to the insurers' respective degree of liability cannot be made. USF&G's cause of action for equitable estoppel fails at the outset for insufficiency because it does not allege that CNA misrepresented any material facts. As the plain language of USF&G's complaint states, CNA said or did nothing in response to USF&G's statements regarding liability as between CNA and USF&G and merely "acknowledged" CNA's statement that it would file a declaratory judgment action.

Regarding CNA's failure to respond to USF&G's comments as to the respective liability of USF&G and CNA at the settlement conference, the conference concerned the liability of the various defendants to Brehmer. It was not a conference to determine the rights of USF&G and CNA as to each other. Thus, CNA had no duty to discuss that issue. Without the requisite duty, silence does not constitute conduct inducing detrimental reliance. (*Bodine v. Bodine* (1986), 141 Ill. App. 3d 21, 489 N.E.2d 911.) Moreover, CNA's acquiescence to the trial court's statement that it did not see how the settlement would effect a determination as to liability between USF&G and CNA does not provide grounds for equitable estoppel. Counsel for USF&G and CNA, present at the settlement conference, are presumed to be equally capable of knowing and applying the law. USF&G's failure to realize the impact of dismissing the third-party complaint cannot be attributed to CNA.[2] (See *City of Aurora v. Green* (1984), 126 Ill. App. 3d 684, 467 N.E.2d 610.) Moreover, the trial court's comment did not infer that a dismissal of the third-party complaint would have no effect on a future action between USF&G and CNA. The comment referred only to the settlement with Brehmer. Accordingly, the trial court properly dismissed count III of USF&G's amended complaint for failure to state a cause of action for equitable estoppel.

For the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.

---

[2]Counsel for USF&G on appeal did not represent USF&G during negotiations or at the trial court proceedings.