**AETNA CASUALTY & SURETY COMPANY, a corporation, Plaintiff,**

v.

**CHICAGO INSURANCE COMPANY, a corporation, Defendant.**

No. 88 C 9265.

United States District Court, N.D. Illinois, E.D.

Nov. 27, 1991.

Jill B. Berkeley, Cassiday, Schade & Gloor, Chicago, Ill., for plaintiff.

Mitchell Alan Orpett, Steven R. McMannon, Tribler & Orpett, Chicago, Ill., for defendant.

### MEMORANDUM AND ORDER

LINDBERG, District Judge.

In 1982, Irene Higgins, as guardian for the estate of Patricia Grammas, filed a personal injury action ("the *Grammas* suit") against Brook Park Pharmacy ("Brook Park"). An amended complaint filed in 1984 joined three of Brook Park's pharmacists, Paul Pinter, Frank Nale and Joseph Celer, as defendants. The *Grammas* suit concerned injuries allegedly sustained in June of 1981 from the rendering of professional services.

At the time of the occurrence alleged in the *Grammas* suit, Brook Park and each of the three pharmacists were insured by West American Insurance Company ("West American") and Aetna Casualty & Surety Company ("Aetna"). The West American policy furnished primary coverage of $100,000 with a $300,000 aggregate; the Aetna policy furnished excess coverage up to $1,000,000. One of the pharmacists, Joseph Celer, was also separately insured by Chicago Insurance Company ("Chicago Insurance"), which provided coverage of $200,000 per claim. Unlike the West American policy, the policy issued by Chicago Insurance to Joseph Celer was not listed on Aetna's schedule of underlying insurance; it also did not provide coverage to Brook Park, Paul Pinter or Frank Nale. Chicago Insurance insured only Celer.

West American undertook the defense of Brook Park and the three pharmacists. In 1987, West American offered its policy limits ($100,000) in settlement, but the plaintiff in the *Grammas* suit rejected the offer. West American then tendered its policy limits to Aetna, which assumed control of the defense. At no time prior to the settlement of the *Grammas* suit did Aetna, West American or Celer tender Celer's defense to Chicago Insurance.

■ In January of 1988, just prior to trial, Aetna settled the *Grammas* suit for $702,900 (including the $100,000 from West American). The settlement did not apportion liability among the defendants, but each defendant's liability was extinguished entirely. The day before the settlement Aetna asked Chicago Insurance to contribute its policy limits ($200,000) to the settlement. Chicago Insurance refused, offering instead to contribute an amount equal to the ratio of its policy limits to Aetna's. Aetna rejected the proposal and filed suit in state court seeking a declaratory judgment that Chicago Insurance was obligated to pay its $200,000 liability limits to Aetna and reimburse Aetna for the defense furnished to Celer. Chicago Insurance removed the case to this court based on diversity of citizenship.

In 1989, the parties filed cross-motions for summary judgment. The matter was referred to Magistrate Judge Guzman, who issued a report and recommendation on February 19, 1991. Magistrate Judge Guzman recommended the entry of summary judgment in favor of Aetna and against Chicago Insurance. The Magistrate Judge reasoned that the Aetna policy was "true" excess insurance whose coverage was triggered only after all applicable primary policies (including Chicago's) had been exhausted. Chicago Insurance filed timely objections to the Magistrate Judge's report and recommendation; Aetna responded and also filed a request for Rule 11 sanctions. For the following reasons, Chicago Insurance's objections to the Magistrate Judge's report and recommendation are sustained.

The Magistrate Judge's report and recommendation centers upon which party's policy is excess to the other given their conflicting "other insurance" clauses. (Report and Recommendation, p. 5). The court concurs in the Magistrate Judge's well-reasoned conclusion that under *Illinois Emcasco Insurance Co. v. Continental Casualty Company*, 139 Ill.App.3d 130, 93 Ill. Dec. 666, 487 N.E.2d 110 (1985), the Aetna policy is "true excess" with regard to claims to which both policies apply. The problem here is that Chicago Insurance insured only Celer. Its policy was not available to Brook Park or pharmacists Pinter and Nale. Consequently, Aetna's policy *cannot* be excess to Chicago's insofar as Brook Park, Pinter and Nale are concerned because the Aetna policy is only "excess ... over any other valid and collectible insurance *available to the insured ....*" (Aetna policy, Section 6, Paragraph 6.7).

This court's determination that Aetna's policy is not excess to Chicago's for the settlement liability of Brook Park, Pinter and Nale is supported by *Illinois Emcasco*, which recommends interpreting the policies with the parties' "underlying policy considerations" in mind. 93 Ill.Dec. at 668, 487 N.E.2d at 112. Here, Aetna issued an excess policy which afforded coverage to all of the *Grammas* defendants, including Celer. Aetna's policy was issued with a schedule of underlying insurance that named

only West American. From an underwriting standpoint, the risk assumed by Aetna did not contemplate primary coverage by Chicago Insurance. The fact that Celer had a policy with Chicago Insurance was entirely fortuitous; it could not have influenced Aetna's expectations concerning the level of primary coverage that would be available to its insureds or the premium it charged. See *Illinois Emcasco*, 93 Ill.Dec. at 668, 487 N.E.2d at 112. Likewise, Chicago Insurance insured only Celer. The risk assumed by Chicago Insurance did not contemplate the risk attendant to insuring an entire pharmacy and its staff of pharmacists. The broader exposure would certainly affect the premium charged, if not the very decision to insure.

Viewing these policies in their entirety and in light of their underlying policy considerations, as *Illinois Emcasco* requires, there is no basis for holding Chicago Insurance liable for any portion of the *Grammas* settlement attributable to Brook Park, Pinter or Nale. Chicago Insurance's liability must be limited to Celer's share of the settlement, up to its policy limits. Unfortunately for Aetna, the terms of the settlement do not furnish the court with any basis for deciding how much of the total settlement is attributable to Celer.

■ Aetna's attorneys, Cassiday Schade & Gloor, controlled the defense and settlement of the *Grammas* litigation. Despite the knowledge that Celer was separately insured by Chicago Insurance, Aetna's counsel took no steps to apportion the *Grammas* defendants' liability under the settlement. Such an apportionment, if made with Chicago's knowledge and without its objection, would have been binding on Chicago Insurance in the absence of fraud or collusion. There is no equity in attempting to make that apportionment now; the incident which gave rise to the *Grammas* suit occurred nearly a decade ago. Chicago Insurance, which received late notice of the claim and had no opportunity to defend its insured, would be at a distinct disadvantage in trying to "reconstruct" the extent of its insured's liability. Aetna's settlement of the *Grammas* suit

without first apportioning the liability thereunder estops it from seeking apportionment at this time. See *United States Fidelity & Guaranty Co. v. Continental Casualty Co.*, 198 Ill.App.3d 950, 145 Ill. Dec. 53, 556 N.E.2d 671 (1990).

■ For similar reasons, defendant's objections to that portion of the Magistrate Judge's report and recommendation concerning Chicago Insurance's liability for defense costs are also sustained. Coverage for the cost of an insured's defense is a separate aspect of the Chicago policy. It could only be triggered by knowledge that the insured has been sued *and* by knowledge that Chicago's assistance was desired. See *Hartford Add. & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380 (7th Cir.1985). Absent a tender of defense by Celer (or Aetna, on his behalf), the coverage for defense costs under the Chicago policy was not triggered. An insurer should not be required to pay the cost of defending an action which it was never afforded an opportunity to defend in the first instance, particularly when the demand for reimbursement comes after the litigation has been concluded.

Accordingly, defendant's objections to the Magistrate Judge's report and recommendation are sustained. Aetna's motion for summary judgment is denied and Chicago Insurance's motion for summary judgment is granted. The court finds and declares that Chicago Insurance is not obligated to contribute to the defense or settlement of the *Grammas* litigation.

The only remaining issue is Aetna's motion for Rule 11 sanctions. The Rule 11 motion centers on two points: (a) Chicago's reliance on *United States Fidelity & Guaranty Co. v. Continental Casualty Co.*, 198 Ill.App.3d 950, 145 Ill.Dec. 53, 556 N.E.2d 671 (1990); and (b) Chicago's attempt to distinguish *Illinois Emcasco*. Aetna's arguments concerning both points are rejected. The *Continental Casualty* decision, though perhaps inartfully argued by Chicago Insurance, supports this court's determination that Aetna is estopped from seeking contribution from Chicago Insurance because of Aetna's failure to appor-

tion liability at the time of the *Grammas* settlement. As for Chicago's attempt to distinguish *Illinois Emcasco* on the basis that Chicago Insurance did not coinsure Brook Park, Pinter and Nale, the court has found this distinction meritorious.

ORDERED: Defendant's objections to the Magistrate Judge's report and recommendation are sustained. Plaintiff, Aetna Casualty & Surety Company's, motion for summary judgment is denied. Defendant, Chicago Insurance Company's, motion for summary judgment is granted. Aetna's motion for Rule 11 sanctions is denied.