**AETNA CASUALTY & SURETY CO., Plaintiff–Appellant,**

v.

**CHICAGO INSURANCE CO., Defendant–Appellee.**

**No. 91–3796.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1992.

Decided May 26, 1993.

Lynn D. Dowd, Timothy J. Ashe, Jill B. Berkeley (argued), Cassiday, Schade & Gloor, Chicago, IL, for plaintiff-appellant.

D.J. Sartorio, Mitchell A. Orpett (argued), Steven R. McMannon, Tribler & Orpett, Chicago, IL, for defendant-appellee.

Before FLAUM and ROVNER, Circuit Judges, and LAY, Senior Circuit Judge.*

FLAUM, Circuit Judge.

In October of 1988, Aetna Casualty & Surety Company filed a declaratory judgment action against Chicago Insurance Company, seeking partial reimbursement of a wrongful death settlement. Chicago Insurance removed to federal court. The parties cross-moved for summary judgment, and the case was submitted to a magistrate judge for a report and recommendation. On Decem-

* The Honorable Donald Lay, Senior Circuit Judge of the Eighth Circuit Court of Appeals, sitting by designation.

ber 2, 1991, the district court entered judgment in favor of Chicago Insurance, rejecting the recommendation of the magistrate. 782 F.Supp. 71. Aetna appeals.

## I.

The guardian of Patricia Grammas' estate filed a wrongful death action against Brook Park Pharmacy in 1982, and later added ·as defendants three pharmacist employees, Paul Pinter, Frank Nale, and Joseph Celer. West American Insurance Company insured Brook Park Pharmacy under a comprehensive general liability policy that listed Pinter, Nale, and Celer as additional insureds. It provided per claim coverage of $100,000 and included an obligation to defend and to indemnify the pharmacy and its employees against claims for personal injuries. In addition, Joseph Celer held a professional liability insurance policy from Chicago Insurance Company, which provided per claim coverage of $200,000. Finally, Aetna Casualty & Surety Company issued to Brook Park Pharmacy an excess indemnity policy that also covered each of the three pharmacists. The Aetna policy had a liability limit of $1,000,000 per occurrence.

Initially, West American undertook the defense of the Grammas lawsuit, but when the plaintiff rejected the offer of its policy limits in 1987, it tendered the $100,000 to Aetna, which assumed control of the defense. In January of 1988, Aetna settled the suit on behalf of Brook Park and the pharmacist defendants for $702,900. The settlement did not apportion liability among the four defendants. At no time did Aetna or Celer tender Celer's defense to Chicago Insurance. The day before the settlement, Aetna asked Chicago Insurance to contribute its policy limits of $200,000. Chicago Insurance refused, but offered to contribute an amount commensurate to the ratio of the companies' respective policy limits of $200,000 and $1,000,000. Aetna rejected Chicago's offer, settled the Grammas case, and filed this suit against Chicago Insurance.

Aetna argued in the district court that Chicago Insurance is obligated to pay its

$200,000 policy limits to Aetna and to reimburse Aetna for the costs incurred in defending Celer. Initially, Chicago disputed its liability primarily based on the other insurance clauses contained in its policy and Aetna's policy. The magistrate judge compared the policies and determined that Aetna was the true excess insurer and recommended that Chicago Insurance be held obligated to pay. Chicago Insurance filed objections to the report and recommendation, based on its limited coverage of only Celer and on Celer's failure to tender the defense to Chicago.

The district court adopted the magistrate's finding that Aetna was the true excess insurer, but granted summary judgment for Chicago Insurance. The court was persuaded that, because Chicago only insured Celer and thus there was no commonality of insureds between the insurance companies, Chicago should not have to pay as the secondary insurer for the full amount, covering all four *Grammas* defendants. It reasoned that Chicago should be liable only for Celer's part of the settlement, up to its policy limits. Furthermore, because Aetna failed to obtain an apportionment of liability before settling the underlying case, Chicago had no obligation to reimburse Aetna for any part of the settlement. In addition, the district court ruled that Chicago was not liable for any defense costs because neither Celer nor Aetna ever tendered Celer's defense to Chicago.[1]

## II.

▋ We review a district court's grant of summary judgment de novo, and we may affirm summary judgment on any ground that is supported by the record. *Council 31, AFSCME, et al. v. Ward,* 978 F.2d 373, 377 (7th Cir.1992); *Reed v. AMAX Coal Co.,* 971 F.2d 1295, 1298 (7th Cir.1992). The resolution of this case depends on the parties' respective rights and obligations under Illinois law. Therefore, we must decide the case as we believe the Illinois Supreme Court would, guided by Illinois law and public policy concerns.

Aetna claims that Chicago Insurance owes Aetna its full policy limits of $200,000 be-

---

1. At argument, Aetna waived its appeal on de-     fense costs, and we will not address this issue.

cause both companies issued policies which covered Joseph Celer, and Aetna's policy is excess compared to Chicago's policy. Aetna paid the full amount of the unapportioned settlement after the first $100,000 and, under the Illinois rule of joint and several liability, Celer is responsible for the entire amount. Chicago claims that it owes Aetna nothing, despite the fact that its policy would have covered the claims against Celer in the underlying suit, because neither Celer nor Aetna ever tendered Celer's defense to Chicago. Aetna responds that no formal tender is required, as long as Chicago had actual notice of the claim. Chicago does not dispute the fact that it knew of the *Grammas* litigation.

There is nothing unusual about one insurance company suing another for partial reimbursement of payment on behalf of a party insured by both companies. *See Hartford Casualty Ins. Co. v. Argonaut–Midwest Ins. Co.*, 854 F.2d 279, 281 (7th Cir.1988) ("Cases in which insurance companies sue each other because of joint coverage are legion.") (citations omitted). Recovery is permitted under theories of equitable contribution, subrogation, or assignment. *See id.; Forum Ins. Co. v. Ranger Ins. Co.*, 711 F.Supp. 909, 914 (N.D.Ill.1989) (citations omitted). In each case, the defendant insurance company must have been liable to the insured in order for the plaintiff insurance company to recover.

■ Aetna is pursuing recovery from Chicago as the subrogee of Joseph Celer. Subrogation is an equitable doctrine, like contribution,[2] whereby one who fulfills an obligation on behalf of another stands in the other's place with respect to the claim. *Dix Mutual Ins. Co. v. LaFramboise*, 149 Ill.2d 314, 173 Ill.Dec. 648, 650, 597 N.E.2d 622, 624 (1992). "Subrogation is allowed to prevent injustice and unjust enrichment [and] will not be allowed where it would be inequitable." *Id.*, 173 Ill.Dec. at 650, 597 N.E.2d at 624. Whether or not a party will be allowed to recover as the subrogee of another, there-

fore, "depends upon the equities of each particular case." *Id.* (citation omitted). The subrogee steps into the shoes of the one whose claim or debt it has covered and can only enforce rights the latter could enforce. In Illinois, an excess insurer who settles a claim on behalf of an insured may recover, as the subrogee of the insured, from another insurer who unjustifiably refused to defend the insured. *Aetna Casualty & Surety Co. v. Coronet Ins. Co.*, 44 Ill.App.3d 744, 3 Ill.Dec. 371, 375, 358 N.E.2d 914, 918 (5th Dist.1976).

■ An insurance company has a duty to defend its insured against any claim potentially within the coverage of its policy. *Central Mutual Ins. Co. v. Kammerling*, 212 Ill.App.3d 744, 156 Ill.Dec. 826, 829, 571 N.E.2d 806, 809 (1st Dist.1991). If an insurer believes the claim falls outside the policy's coverage or an exclusion applies, it must defend the insured under a reservation of rights and adjudicate its coverage in a supplemental suit or bring a declaratory judgment action to determine the coverage issue before trial or settlement of the underlying action. *Id.*, 156 Ill.Dec. at 829, 571 N.E.2d at 809; *Coronet Ins. Co.*, 3 Ill.Dec. at 374, 358 N.E.2d at 917. "'Where an insurer takes neither course of action, its failure to defend is unjustified and it is estopped from later raising policy exclusions or defenses in a subsequent action by the insured or the insured's subrogee.'" *Kammerling*, 156 Ill. Dec. at 829, 571 N.E.2d at 809 (citation omitted); *Hartford Accident & Indemnity Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1382 (7th Cir. 1985) (*"Hartford Accident I"*).

**A.**

■ The focus in the district court was on the distinction between Aetna's excess policy and Chicago's primary policy with an "other insurance" clause. Guided by *Illinois Emcasco Ins. Co. v. Continental Casualty Co.*, 139 Ill.App.3d 130, 93 Ill.Dec. 666, 487

**2.** Equitable contribution applies only where the insurance policies cover the same parties and insurable interests and risks. *Home Indemnity Co. v. General Accident Insurance Co.*, 213 Ill. App.3d 319, 157 Ill.Dec. 498, 499, 572 N.E.2d 962, 963 (1st Dist.1991); *Royal Globe Insurance Co. v. Aetna Insurance Co.*, 82 Ill.App.3d 1003, 38

Ill.Dec. 449, 451, 403 N.E.2d 680, 682 (1st Dist. 1980). Not only do Aetna and Chicago cover different insureds, they also cover different levels of risk. "[B]y their very nature, primary and excess policies do not cover the same risks." *Home Indemnity Co.*, 157 Ill.Dec. at 499, 572 N.E.2d at 963.

N.E.2d 110 (1st Dist.1985), both the magistrate judge and the district court determined that Aetna's policy was "true excess" or an umbrella policy.[3] Chicago's policy was secondary to West American's policy, by virtue of its "other insurance" clause, but it was primary in relation to Aetna's policy. We agree that, under *Illinois Emcasco*, an umbrella policy like Aetna's is not subject to pro rata apportionment with other policies containing "other insurance" clauses. Rather, all other insurance policies must be exhausted before umbrella policies will provide coverage.

In *United States Fidelity & Guaranty v. Continental Casualty Co.*, 198 Ill.App.3d 950, 145 Ill.Dec. 53, 556 N.E.2d 671 (1st Dist. 1990) ("*USF & G*"), the primary insurer defended the lawsuit, settled without obtaining an apportionment, and dismissed with prejudice its crossclaim against the excess insurer. After settlement, it filed a declaratory judgment action against the excess insurer for one of its insureds, seeking partial reimbursement. The court refused to apportion the liability and find that the party covered by the excess insurer's policy owed a greater share of the settlement amount. Since there was no way to know which insured was liable for what amount, the court allowed the exhaustion of all the primary insurance policy limits before turning to the excess insurer.

Both *USF & G* and this case involve multiple insurance companies and a lack of identity of insureds. In this case, however, it was the excess insurer that defended all of its insureds in the underlying lawsuit and settled the case without attempting to apportion liability. Unlike the *USF & G* primary insurer's failure to obtain an apportionment, Aetna's decision not to apportion liability

among the four defendants works to prejudice Chicago, not itself.[4] *USF & G* made it clear that Illinois courts would not apportion liability among insureds in a later declaratory action. Instead, courts will allow the exhaustion of the primary layer of insurance before turning to the excess. It is less clear if this general policy holds when the excess insurer covers more defendants than the other insurer. Once West American's $100,000 primary policy is exhausted, the next layer for three of four defendants is Aetna's $1,000,000 excess policy. Only one defendant, Celer, has another available layer before the excess layer. *USF & G*, in which the primary insurer covered more defendants than the excess carrier, does not definitively resolve the apportionment issue in this case.

This is not a situation where the excess insurer steps in early to take responsibility for the defense after another insurer shirks its duty; Aetna agreed to take over the defense as the next available insurer for three defendants once West American's policy limits were rejected in settlement. Aetna certainly had an incentive to take over the defense at that stage, in order to limit its exposure under its one million dollar policy limit. At the same time, Aetna had no incentive to apportion liability; as the excess insurer, its incentive is to settle without an apportionment so that each defendant is jointly and severally liable for the entire amount. That way, any other insurance held by any defendant will be available for payment up to the full amount of settlement before the excess policy is touched.

Neither side cited an Illinois case to us in which the excess insurer covered all defendants, settled without getting an apportionment, and sought the policy limits from a primary insurer of only one defendant. Nor

---

3. Another Illinois case, *Home Indemnity*, resolved a dispute about the priority between two insurance policies claiming to be excess by examining the "other insurance" clauses, unlike the "whole policy" approach taken in *Illinois Emcasco*. *Home Indemnity* specifically distinguishes *Illinois Emcasco*, however, based on its consideration of the " 'unique and special coverage' of an umbrella policy." *Home Indemnity*, 157 Ill.Dec. at 501, 572 N.E.2d at 965. The resolution of those cases and this case would be the same under either approach, because in any

event an umbrella policy is considered excess to all other policies.

4. In Aetna's response to Chicago's motion for summary judgment, it answered Chicago's objection to lack of apportionment by claiming that Celer was probably the "most culpable" among the employees. Of course no one can make any such determination at this point. The only issue is whether Celer's policy with Chicago Insurance is available to Aetna for reimbursement.

did we find one. We anticipate, however, that Illinois courts would permit the exhaustion of a secondary insurance policy which covered fewer parties than the settling excess insurer before holding the excess insurer liable. If the ordinary rule is to exhaust all other insurance before reaching excess or umbrella coverage, it makes sense to deplete even policies held by only one party before turning to the excess insurer. Besides, Illinois has adopted a policy of requiring insurers to preserve any coverage defenses and to protect their rights to contribution and reimbursement once their policies are triggered. *See, generally Kammerling,* 156 Ill.Dec. at 829, 571 N.E.2d at 809. That requirement could reasonably be applied to situations like this one, in which the insurers cover different parties. Once an insurer has the opportunity and the obligation to defend its insured, Illinois has no reason to protect that insurer from an inequitable settlement fashioned by another insurer.

### B.

Unlike the primary insurer in *USF & G,* however, Chicago did not have the opportunity to choose a litigation strategy or get an apportionment before settling the dispute. Chicago must reimburse Aetna only if Chicago's coverage was triggered and it failed to take adequate steps to limit its liability. There is no contention that Chicago reserved its rights or obtained a declaratory judgment releasing it from any obligation to pay. The only question, therefore, is whether its policy was triggered.

"An insurer's obligations under an insurance contract are ordinarily triggered when the insured of [someone acting on behalf of the insured] tenders the defense of an action potentially within the policy coverage." *Institute of London Underwriters v. Hartford Fire Ins. Co.,* 234 Ill.App.3d 70, 175 Ill.Dec. 297, 299, 599 N.E.2d 1311, 1313 (1st Dist. 1992) (citations omitted); *Hartford Accident I,* 776 F.2d at 1382 ("Under Illinois law, an insurance company that wrongfully refuses to defend *a legitimately tendered claim* will later be estopped from denying coverage.") (emphasis added). In most cases, the issue of a tender is not raised. The usual litigation

over insurance coverage begins after all parties agree that the insured tendered its defense and for some reason the insurer does not defend the insured. Instead of specifically noting that the insured must tender its defense, therefore, courts simply incorporate the defense tender as an assumption or a simple fact. *See, e.g. Tews Funeral Home, Inc. v. Ohio Casualty Ins. Co.,* 832 F.2d 1037, 1042 (7th Cir.1987) ("In Illinois, an insurer has only three options *when an insured requests it to defend* a third party action which the insurer believes to be outside the scope of the policy.") (emphasis added). This can lead to language which, by omission, seems to support Aetna's position. *See, e.g. Kammerling,* 156 Ill.Dec. at 829, 571 N.E.2d at 809 ("If the complaint alleges facts within the coverage of the policy or potentially [so] ... the insurer's duty to defend has been established.") A closer look at those cases, however, shows that the insured did tender its defense to the insurer, and the issue before the court concerned the actions of the insurer after the tender.

Several cases construing Illinois law have specifically considered whether the insured must tender its defense to the insurance company before the policy coverage is triggered and have concluded that it must. *See Institute of London Underwriters,* 175 Ill. Dec. at 297, 599 N.E.2d 1311; *Hartford Accident & Indemnity Co. v. Gulf Ins. Co.,* 837 F.2d 767 (7th Cir.1988) ("*Hartford Accident II* "); *Hartford Accident I,* 776 F.2d 1380; *Forum Ins.,* 711 F.Supp. 909. In *Hartford Accident I,* 776 F.2d at 1383, this court held that "[m]ere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." The logic behind this requirement is especially clear, and its application especially appropriate, in cases in which the insured holds multiple policies and the claims against it potentially fall within each policy.

It is undisputed that the insured, Joseph Celer, never tendered his defense to Chicago Insurance or asked Chicago to indemnify

him.[5] In *London Underwriters*, the Illinois Appellate Court held that, where two policies potentially cover a loss, an insured may choose which insurer must defend and indemnify it by tendering the defense to that insurer and not the other. Moreover, the settling insurer may not then force the other insurer to contribute to the settlement. In addition, the insured's failure to tender his defense "may foreclose his right to coverage under a policy, and thus, defeat a claim for equitable contribution [or subrogation] by another insurance carrier." *Id.*, 175 Ill.Dec. at 302, 599 N.E.2d at 1316 (citation omitted).

The facts in *London Underwriters* differ from the facts in this case in one important respect. The insured in *London Underwriters* specifically requested that one insurer not respond to the loss. There is no evidence in this case that Celer asked Chicago not to defend or indemnify him, or that he was making a strategic decision between his insurers. The court in *London Underwriters*, relying for reasoning on *Hartford Accident I*, characterized the insured as "sophisticated." In one case, the insured is a large corporation and in the other, a city. *But see Forum Ins.*, 711 F.Supp. at 912 n. 4 (*quoting Hartford Accident II* (while sophisticated insured is considered more likely to act purposefully in failure to tender, even unsophisticated insured must make some kind of tender of defense under Illinois law)).

In *Long v. Great Central Ins. Co.*, 190 Ill.App.3d 159, 137 Ill.Dec. 794, 800, 546 N.E.2d 739, 745 (4th Dist.1989), another Illinois appellate court distinguished *Hartford Accident I* on the basis of the "sophisticated" classification. It held that the plaintiff was an " 'unschooled layman' who was not obligated to make an active tender" of his defense to the defendant insurance company. In *Long*, however, the insured bar owner delivered claim documents, and in essence tendered his defense, to the insurer's agent. Clearly, the insured wanted the defendant, his only insurer, to defend him in the underlying lawsuit. Instead, no one ever filed an appearance on behalf of the insured and a

default judgment was entered against him. The insurance company denied liability for the judgment amount, based on the insured's failure to tender his defense by mailing all of the appropriate documents to it. Under those circumstances, the Illinois appellate court was unwilling to excuse the insurer from covering the judgment.

The insured in this case falls somewhere in the middle. Joseph Celer is a pharmacist protected by three insurance policies covering various risks up to $1,300,000. His situation can be distinguished from that of both the "sophisticated" and "unschooled" insureds described in the cases above. Therefore, we must try to discern the result an Illinois court would reach in this case, based on the factual situation and the various policies expressed by Illinois courts.

Clearly, the state seeks to encourage insurers to fulfill their obligations under their policies without being dragged to the courthouse. *See Coronet Ins. Co.*, 3 Ill.Dec. at 374–75, 358 N.E.2d at 917–18; *see also Western Casualty & Surety Co. v. Western World Ins. Co.*, 769 F.2d 381, 383 (7th Cir.1985) ("[I]t is a bad idea to inform insurance carriers that whichever is least faithful to its obligation to the insured will escape all liability as long as a responsible carrier covers the loss.") (citation omitted). "Strict enforcement of the duty to defend serves the state's interest in assuring that an insured is adequately represented in litigation." *Hartford Accident I*, 776 F.2d at 1382. On the other hand, the state will allow an insured to choose which carrier must defend a claim. *See London Underwriters*, 175 Ill.Dec. at 297, 599 N.E.2d 1311. Once an insured is adequately represented, the state has no reason to interfere in the contractual relationship between insurance companies and their insureds. Moreover, because an insurer which wrongfully refuses to defend will be estopped from denying coverage, "the insurer at least should be given the opportunity to defend," and that requires notice and a request for coverage. *Forum Ins.*, 711

---

5. At this point the failure to tender Celer's defense to Chicago Insurance is indisputable. This fact was admitted by Aetna in its response to Chicago's statement of undisputed facts (R. 58

¶ 8), relied upon by the magistrate without objection (Report, p. 3) and relied upon by the district court without appeal (Memorandum and Order, p. 2).

F.Supp. at 912; *see also LaRotunda v. Royal Globe Ins. Co.*, 87 Ill.App.3d 446, 42 Ill.Dec. 219, 225, 408 N.E.2d 928, 934 (1st Dist.1980) ("[T]here is no estoppel where the insurer was given no opportunity to defend....").

In this case, Celer had adequate representation in the underlying litigation. First West American defended him and then Aetna; Illinois' interest in every insured receiving adequate representation is not implicated in this suit. Celer never indicated that he wanted Chicago to participate in his defense. The decision to allow Aetna to defend and indemnify him and not to involve Chicago does not seem "arbitrary, whimsical, or vindictive." *London Underwriters*, 175 Ill.Dec. at 302, 599 N.E.2d at 1316. Because the underlying suit involved claims against Celer, two coworkers, and their employer, it made sense for Celer to be represented by the same counsel as his codefendants. As Aetna itself has repeatedly emphasized throughout this case, counsel for the four codefendants decided that a unified defense was the best strategy to protect all four insureds' interests. While there is no contention that Chicago's policy would not apply to the claims in the underlying suit, as there was in *London Underwriters*, Celer may have rationally concluded that representation by the common insurer better suited his defense.

Aetna argues that the only relevant question is one of notice.[6] Because Chicago Insurance knew about the *Grammas* litigation even before Aetna took over the defense, it had actual notice, if not notification, of the claim. By failing to defend its insured under a reservation of rights, Aetna contends, Chicago is estopped from raising any defenses to coverage, such as improper or late notice of the claim. Illinois law would support this assertion if Celer had tendered his defense to Chicago. If Chicago had known of the claim and the potential coverage under the policy issued to Celer and had notice that its participation was desired, the burden would be on Chicago to file a declaratory judgment action or defend under a reservation of rights. If it had refused to defend, it would be estopped from raising any defenses now. Aetna would stand in Celer's place and would be entitled to collect under the policy. Because Celer failed to take the crucial, preliminary step of tendering his defense to Chicago, however, Chicago's policy coverage was never triggered. Therefore, we do not have occasion to consider issues such as coverage defenses.

■ Mere knowledge of a potentially covered claim by an insurer is not enough to constitute a tender. The insurer must know that its participation is desired by the insured. *Hartford Accident I*, 776 F.2d at 1383 ("An insurance company is not required to intermeddle officiously where its services have not been requested."). In this case, West American handled the defense of the four defendants, as the primary insurer of all four. When its policy limits were refused in settlement, it tendered the defense of the four insureds to Aetna, the only other insurer that covered all four. Aetna accepted the $100,000 policy limits from West American and took over the defense. Chicago knew of the claim against Celer, even before Aetna took over.[7] It also knew that Celer was being defended with his codefendants, that both West American and Aetna knew of its policy, that Aetna was knowledgeable and sophisticated in its insurance defense decisions, and that Celer's defense had not been

---

**6.** A parallel line of cases in Illinois, mostly dealing with car accidents, describes the relevant inquiry as one of notice, not formal tendering. The decisions in those cases seem to permit recovery by injured parties from insurers despite technical noncompliance with notice, where the alternative is an uncovered default judgment against the insured. *See, e.g. Olivieri v. Coronet Ins. Co.*, 173 Ill.App.3d 867, 124 Ill.Dec. 95, 528 N.E.2d 986 (1st Dist.1988). However, in cases where another insurance company is trying to recover from a co-insurer, Illinois courts have excused payment by the co-insurer after technical noncompliance by the insured. *See, e.g. Del Grosso v. Casualty Ins. Co.*, 170 Ill.App.3d 1098,

120 Ill.Dec. 860, 524 N.E.2d 1042 (1st Dist. 1988). Although this line of cases supports to some extent Aetna's insistence that notice, not tendering, is the trigger for coverage, the cases are clearly distinguishable from the current case against Chicago Insurance. Moreover, even under this line of cases, Aetna would probably not be able to recover from Chicago, since Celer was adequately defended and Aetna is trying to recover from another insurer.

**7.** Exactly when and how Chicago learned of the wrongful death claims against its insured is not clear from the record.

tendered to it. Its participation in the defense, in fact, was never requested, and it was only contacted by Aetna for a last minute, full policy contribution to the settlement worked out by Aetna. Under the circumstances, therefore, Chicago had the right to wait for a tender before taking action. Because neither Celer nor Aetna acting on Celer's behalf ever tendered Celer's defense to Chicago, we affirm the judgment of the district court, that Chicago is not liable under its policy to pay any part of the settlement in the underlying lawsuit.

### III.

Aetna filed a Rule 11 motion for sanctions against Chicago Insurance, which the district court denied. Aetna appeals the denial of sanctions, contending that Chicago has conducted this litigation in bad faith. We do not agree that the arguments offered by Chicago Insurance, in the district court and on appeal, are without a good faith legal or factual basis. We also do not agree with Aetna that the issues presented in this case called for a straight-forward application of the case law cited by it. Rule 11 sanctions against Chicago Insurance, therefore, are inappropriate.[8]

The judgment of the district court is

AFFIRMED.

---

8. In addition, we note that Aetna made several curious decisions in briefing this appeal. For example, it argued for the application of *USF & G* in its initial brief, then argued that its application is inappropriate and "legally erroneous" in its reply brief. At oral argument, Aetna returned to its original position, that we should follow the reasoning of *USF & G*, and accused Chicago Insurance of waffling on the applicability of that case. In addition, Aetna asserted in its reply brief that the "tendering" issue argued by Chicago was "legally erroneous" and raised belatedly, when in fact it was neither. Aetna did not attempt to distinguish any of the cases which discuss the requirement of tendering a defense before coverage is triggered. Given its own shortcomings, we are surprised Aetna has continued to pursue Rule 11 sanctions.