HONEYWELL, INC., d/b/a Micro Switch, *et al.*, Plaintiffs-Appellants, *v.* AMERICAN MOTORISTS INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 82—32

Opinion filed October 5, 1982.

James R. Shoemaker, of Turner & Shoemaker, of Rockford, for appellants.

Mark W. Boswell, of Reno, Zahm, Folgate, Lindberg & Powell, of Rockford, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This is a controversy between two insurance companies. Hartford Accident and Indemnity Company insured Micro Switch—a division of Honeywell, Inc. (hereinafter Honeywell) under a comprehensive general liability policy. American Motorists Insurance Company (hereinafter AMIC) insured a food vending company by the name of Ogden Corporation (hereinafter Ogden) under another comprehensive general liability policy. The Hartford policy was for $1,000,000 and by its terms specifically acknowledged that it was primary insurance,

"except when stated to apply in excess of or contingent upon

the absence of other insurance. When this insurance is primary and the *insured* has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance."

The AMIC policy provided as follows with regard to other insurance:

"The insurance afforded by the policy is primary insurance, except that when this insurance and any other valid and collectible insurance apply to the loss on the same basis, this insurance shall be excess of such other insurance and shall not contribute with such other insurance."

(While there is further language in the two policies under their respective "other insurance" clauses, we believe the language quoted above from the two policies is controlling.)

In October 1967, Ogden and Honeywell entered into a contract whereby Honeywell gave Ogden the right to install and maintain automatic food vending devices on Honeywell's premises at Freeport, Illinois. In 1972, a separate paragraph of this agreement was added which provided that Ogden would make Honeywell an additional insured under Ogden's AMIC policy, with minimum limits for bodily injury of $50,000 for each person and $100,000 for each accident. The agreement did not specify that such insurance adding Honeywell as an additional insured should be primary as to Honeywell's already existing Hartford policy or that the Hartford policy would be excess under the provisions of this contract. In accordance with this additional requirement, Ogden's liability insurer, AMIC, issued an endorsement to the AMIC policy (which was issued in October 1975), stating that Honeywell is included as an additional insured under the AMIC policy covering Ogden and showing the term of the AMIC policy as July 5, 1972, to July 5, 1975. This certificate shows the limit of liability of the AMIC policy as $1,000,000, although the agreement only required limits up to $50,000.

On February 2, 1973, Thomas Dowling, an employee of Ogden, was properly on the premises of Honeywell servicing the vending machines Ogden had installed on the Honeywell premises when he slipped and fell on some steel plates near the "slop" sink which had been left near the sink by certain Honeywell employees. Dowling claimed injury as a result of the fall and sued Honeywell. Honeywell tendered the defense of the suit to AMIC, insurer of Ogden, but that company declined to defend. Honeywell then contended that under the indemnity clause of the 1967 contract between Honeywell and

Ogden, the claim should be arbitrated as between Ogden and Honeywell. The arbitrator in the arbitration proceedings held that the indemnity agreement between the parties did not relieve Honeywell from the consequences of its own negligence and since he found Honeywell to be negligent, arbitration was denied.

The case then proceeded to trial and Honeywell was found negligent and judgment was awarded to Dowling in the amount of $74,220 against Honeywell. Hartford paid this judgment under its policy insuring Honeywell and then sued AMIC under its subrogation rights to recover the amount of the judgment. Hartford's theory is that the certificate of insurance issued by AMIC, including Honeywell as an additional insured, made AMIC the primary carrier, rather than Hartford. The trial court held that because of the wording of the "other insurance" clauses in the respective policies, Hartford's policy was primary, and it granted AMIC's motion for summary judgment against Hartford and denied Hartford's motion for summary judgment.

In this appeal, Hartford contends that the trial court's approach to the problem as between the two policies was over-simplistic and that the court should have concentrated on the 1967 agreement between Ogden and Honeywell, which showed an intention between the parties for Ogden to insure Honeywell against any and all claims which might arise out of Ogden's operations on Honeywell's premises. Hartford says that even conceding that the language of the two policies makes Hartford the primary carrier and AMIC only an excess carrier, inasmuch as the insurance certificate issued by AMIC on behalf of Ogden showed an intention to make Ogden primarily liable for any injury arising out of the food vending operations, AMIC, Ogden's insurance carrier, should assume the loss as the primary insurer. Hartford invokes the recent decision of this court in *Truck Insurance Exchange v. Liberty Mutual Insurance Co.* (1981), 102 Ill. App. 3d 24, in support of this contention. In that case, Brown Truck Leasing Corporation leased a truck to Viking Pump Company. The lease agreement provided that Brown Truck Leasing was to furnish liability insurance to protect Viking Pump in the amount of $500,000. The lease also provided that Viking would indemnify and save Brown harmless from any claim in excess of $500,000. Truckmen's policy contained a clause stating its insurance was excess as to loss covered by any other insurance. Viking had its own policy with Liberty Mutual, which provided as to "other insurance" that " 'this insurance shall be excess insurance over any other valid and collectible insurance available to the insured.' " (102 Ill. App. 3d 24, 26.) An accident occurred and claim

was made against Viking Pump. The trial court held that Brown Truck Leasing Corporation's liability carrier was primarily liable. Brown's carrier, Truck Insurance Exchange, sought a declaratory judgment that Viking Pump's carrier, Liberty Mutual, was either the primary carrier or at least should contribute on a *pro rata* basis.

The trial court held that the two excess clauses were incompatible but that the intention of the lease agreement was clear and that the intent was for Brown's insurance carrier to provide primary coverage; therefore, the trial court held that Truck Insurance Exchange's policy should assume the loss.

In the present case, Hartford contends that the intention of the parties should govern, as it did in the *Truck Insurance Exchange* case, and that the language of the two "other insurance" clauses should not control over that intention.

■ We reject this argument. In the first place, the *Truck Insurance Exchange* case is not apposite to the present case because in that case the two "other insurance" clauses were incompatible with each other. Giving effect to both of them would have left the insured without coverage under either policy. In such a case, if there is no other clue by which to decide whether one company or the other is primarily liable, the courts usually have held the companies liable on a *pro rata* basis according to the respective policy's limits or according to the amount of premium paid by each. (Annot., 69 A.L.R. 2d 1122-24 (1960).) Otherwise, the policies share liability on an equal basis. See *Continental Casualty Co. v. Travelers Insurance Co.* (1967), 84 Ill. App. 2d 200.

However, our case is not controlled by *Truck Insurance Exchange* because the two "other insurance" clauses are not incompatible. If read together the two clauses simply show that the Hartford policy is primary and the AMIC policy is excess. Therefore, it is not necessary to disregard the "other insurance" clauses and to resort to the intent of the underlying agreement between the two insured parties to determine whose carrier is primary. Nor can we disregard the two "other insurance" clauses and simply apply a *pro rata* apportionment. In *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, the Illinois Supreme Court discussed several theories as to what should be done when there are "excess" or "escape" clauses in each of two policies. The court noted, for example, that the policy issued earliest is held under one theory to be primary or, under other theories, that the policy issued to the primary tort feasor or the policy of the insurer which more specifically covered the risk involved should be held to be primary. Our supreme court in *Putnam* disregarded all these theories

and resolved the case on the basis of the actual language of the two "other insurance" clauses of the respective policies. The *Putnam* court specifically rejected the theory that where there are two "other insurance" clauses the two policies should be pro rated (the "Oregon" rule) and resolved the case on the basis of the language of the Hartford policy's "other insurance" clause making it primary in view of the "excess" provisions of the policy of New Amsterdam Casualty Co.

■■ Adopting this theory, as seems to us proper in view of the majority opinion in *Putnam*, it is clear that in this case the Hartford policy should be held primary, in accordance with the trial court's decision. While Hartford contends that "intention" as shown by the underlying agreement between the two insured parties should govern and that such an approach would clearly show an intent as between Ogden and Honeywell that Ogden's insurer should be primarily liable in the fact situation at hand, we are not at all sure that the "intent" theory, if adopted, would produce a different result than the trial court arrived at in this case. It seems to us that it was probably not the *intent* of Ogden to furnish insurance relieving Honeywell of its tort liability for an injury to an Ogden employee which occurred on Honeywell premises by reason of the negligence of *Honeywell* employees. That Honeywell was culpably negligent and Dowling, Ogden's employee, not contributorily negligent, has been established by the previous litigation. Had Dowling been negligent and caused injury to a third party by his negligent conduct in the course of his food vending or maintenance operations on Honeywell's premises, clearly it was the intent under such circumstances for Ogden's policy to protect, rather than Honeywell's policy doing so, but that is not what happened. An *Ogden* employee was injured by *Honeywell's* negligence on Honeywell premises, and there does not seem to be any rationale for excusing Honeywell from liability.

We think the present case is clearly distinguishable from *Truck Insurance Exchange v. Liberty Mutual Insurance Co.* (1981), 102 Ill. App. 3d 24, and comes within the principles announced in *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71. Accordingly, we affirm the judgment of the circuit court of Winnebago County.

Judgment affirmed.

HOPF and VAN DEUSEN, JJ., concur.