THE HOME INDEMNITY COMPANY, Indiv. and as Subrogee of Crawford and Russell, Inc., Plaintiff-Appellant, v. GENERAL ACCIDENT INSUR-ANCE COMPANY OF AMERICA, Defendant-Appellee (Shand Morahan and Company, Inc., Indiv. and as Agent of General Accident Insurance Company of America, Defendant).

First District (1st Division)   No. 1—89—1948

Opinion filed February 19, 1991.—Rehearing denied June 7, 1991.

Brinton, Bollinger & Ruberry, of Chicago (John D. Kuhn and Debra Criche Mell, of counsel), for appellant.

Tribler & Orpett, P.C., of Chicago (Willis R. Tribler and D.J. Sartorio, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Home Indemnity Company (Home) appeals an order of the circuit court of Cook County granting defendant General Accident Insurance Company of America's (General) motion to dismiss plaintiff's claim seeking partial reimbursement of defense costs plaintiff incurred in defending claims against subrogor Crawford & Russell. For the following reasons, we affirm.

In 1986, five personal injury suits were filed against Crawford & Russell, an architectural and engineering firm, in connection with an explosion at a plant, alleging that the explosion was caused in part by Crawford & Russell's designs. Crawford & Russell was an additional named insured on a policy issued by Home to the John Brown Group, Inc., covering comprehensive general liability, contractual liability, personal injury liability and employee benefits liability. In addition, Crawford & Russell had purchased an architects and engineers professional liability policy from General. The General policy had a $1 million deductible.

After receiving notice of the personal injury claims, Crawford & Russell filed suit against Home, alleging that Home had a duty to defend them. In 1988, the trial court found that Home had a duty to defend Crawford & Russell, although the record is unclear as to whether that duty extended to all of the underlying claims. The rec-

ord does not indicate whether General was notified of these early proceedings.

On February 17, 1988, Home filed a complaint against General and Shand Morahan & Company (Shand), an agent of General, seeking a declaratory judgment that both the Home and General policies were primary policies covering the personal injury claims, and seeking damages under section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 767). On May 9, 1989, the trial court granted Shand's motion to dismiss the claims against Shand and General's motion to dismiss the statutory claims against General. The trial court also requested supplemental briefs on the issue of whether General had a duty to defend Crawford & Russell in the personal injury claims.

On June 20, 1989, after hearing argument on the issue, the trial court granted General's motion to dismiss the remainder of Home's complaint against General, ruling that Home was the primary insurer and General was an excess insurer that did not have a duty to pay a *pro rata* share of the defense costs. This appeal followed.

■ Plaintiff contends on appeal that the trial court erred in dismissing its claim, which sought to have General contribute to the cost of defending Crawford & Russell in the underlying suits. Home argues that General should have been found to be a "concurrent primary insurer." In reviewing a dismissal, this court may uphold the decision on any basis found in the record. *E.g., In re Marriage of Wilson* (1990), 193 Ill. App. 3d 473, 549 N.E.2d 1348.

■ ■ The initial issue on appeal is whether the trial court erred in finding the Home policy to be primary insurance and the General policy to be excess, because the doctrine of equitable contribution does not apply to primary/excess insurer issues. (*United States Fidelity & Guaranty Co. v. Continental Casualty Co.* (1990), 198 Ill. App. 3d 950, 955, 556 N.E.2d 671, 675.) Contribution among co-insurers may arise where the policies cover a risk on the same basis and there is an identity between the policies as to parties and insurable interests and risks. (See *Zurich Insurance Co. v. Raymark Industries, Inc.* (1986), 145 Ill. App. 3d 175, 494 N.E.2d 634, *aff'd* (1987), 118 Ill. 2d 23, 514 N.E.2d 150; *Royal Globe Insurance Co. v. Aetna Insurance Co.* (1980), 82 Ill. App. 3d 1003, 403 N.E.2d 680.) In contrast, by their very nature, primary and excess policies do not cover the same risks; the protections under the excess policy do not begin until those of the primary policy end. (See *Pekin Insurance Co. v. Cincinnati Insurance Co.* (1987), 157 Ill. App. 3d 404, 510 N.E.2d 524.) Thus, a primary insurer has the primary duty to defend and pay defense costs. See *Occi-*

*dental Fire & Casualty Co. v. Underwriters at Lloyd's, London* (1974), 19 Ill. App. 3d 265, 271, 311 N.E.2d 330, 334-35; *Fireman's Fund Indemnity Co. v. Freeport Insurance Co.* (1961), 30 Ill. App. 2d 69, 76, 173 N.E.2d 543, 546.

■ The question then becomes one of determining whether the policies are primary or excess. Home urges this court to determine the respective liabilities of the insurers based on a construction of the entirety of each policy. General argues that this determination is controlled largely by what are commonly referred to as the "other insurance" clauses in each policy. "Other insurance" clauses, which are designed to reduce multiple recoveries, generally fall into three categories: *"pro rata"* clauses, "excess" clauses and "escape" clauses. *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 76, 269 N.E.2d 97, 99.

■ In *Putnam*, the Illinois Supreme Court discussed several theories other jurisdictions applied to decide cases where there are "excess" or "escape" clauses in each of two policies which may cover a loss. The supreme court resolved the case on the basis of the actual language of the two "other insurance" clauses of the respective policies, rejecting the theory that where there are two "other insurance" clauses the two policies should automatically be pro rated. Two identical "other insurance" clauses will be disregarded, with a resulting apportionment of costs; however, a policy with an "excess" clause does not activate the *"pro rata"* clause of another policy. *Putnam*, 48 Ill. 2d at 77-82, 269 N.E.2d at 100-02.

This court applied the same approach in two later cases, determining that where one policy has a *"pro rata"* clause and another policy contains an "excess" clause, the former policy is primary and the latter policy is excess. (*Deerfield Management Co. v. Ohio Farmers Insurance Co.* (1988), 174 Ill. App. 3d 837, 529 N.E.2d 243; *Honeywell, Inc. v. American Motorists Insurance Co.* (1982), 109 Ill. App. 3d 955, 441 N.E.2d 348.) Thus, despite Home's repeated assertions to the contrary, our courts have determined whether a policy provides primary or excess coverage by reference to the "other insurance" clauses of the policies.

■ In this case, the record shows that the "other insurance" clauses in the policies are quite similar to the clauses at issue in *Deerfield Management*. (See *Deerfield Management*, 174 Ill. App. 3d at 843-44, 529 N.E.2d at 248.) Under *Deerfield Management*, Home's policy contains a *"pro rata"* clause, whereas General's policy contains an "excess" clause. Consequently, the trial court did not abuse its discretion in deciding that the Home policy was primary insurance and

the General policy was excess insurance, based on the record in this case. Nor did the trial court abuse its discretion in holding that General, as the excess carrier, did not have to pay defense costs; the *Deerfield Management* court affirmed a similar judgment.

Home argues that the "other insurance" clauses do not excuse General from a *pro rata* share of defense costs, citing the proposition that the duty to defend is broader than the duty to pay for a loss. (See, *e.g., Murphy v. Urso* (1981), 88 Ill. 2d 444, 451, 430 N.E.2d 1079, 1082.) Home further asserts in its reply brief that "loss should not fall irrevocably upon that insurer which first recognizes its obligations, while one neglectful of its duty is allowed to escape." *New Amsterdam Casualty Co. v. Certain Underwriters at Lloyd's, London* (1966), 34 Ill. 2d 424, 431, 216 N.E.2d 665, 669.

■ The record in this case does indicate that the General policy contains a broad "duty to defend" clause that is similar to the corresponding clause in the Home policy. Home's argument, however, fails to recognize that excess coverage may arise not only by drafting a policy which, on its face, provides excess coverage, but also may arise by "coincidence," where, as here, the interpretation of two "other insurance" clauses renders one policy excess. (See Marick, *Excess Insurance: An Overview of General Principles and Current Issues*, 24 Tort & Ins. L.J. 715, 717-18 (1989) (and citations therein).) Indeed, it is in "coincidence" cases such as the present appeal that one insurer is more likely to seek partial reimbursement from another, for the terms of a facially excess policy may preclude such a claim. See 24 Tort & Ins. L.J. at 729 & n.59.

For example, in *New Amsterdam Casualty Co.*, the supreme court held that the New Amsterdam policy was excess by coincidence with the Lloyd's policy. Nevertheless, New Amsterdam had defended the insured because Lloyd's, which should have had the primary duty to defend, refused to defend the insured. The effect of that refusal was that there was no "valid and collectible other insurance" with which the New Amsterdam policy could coincide. The supreme court allowed New Amsterdam, as the excess carrier, to recoup defense costs from Lloyd's, rejecting the argument that the "other insurance" clauses applied only to the duty to pay losses and not to the duty to defend and pay defense costs. (See *New Amsterdam Casualty Co.*, 34 Ill. 2d at 431, 216 N.E.2d at 669.) Consequently, *New Amsterdam Casualty Co.* does not aid Home's case.

■ We note at this point that Home brought suit against General both individually and as a subrogee of Crawford & Russell. Home, however, cited no authority to support a subrogation theory, thus

waiving any such argument. (134 Ill. 2d R. 341(e)(7).) We further note in passing that prior cases in which one insurer sought reimbursement from another on a subrogation theory were pursued by the excess insurer, rather than the primary insurer. *New Amsterdam Casualty Co.*, 34 Ill. 2d 424, 216 N.E.2d 665; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914; *Fireman's Fund Indemnity Co.*, 30 Ill. App. 2d 69, 173 N.E.2d 543.

One case cited by General took the approach advocated by Home, looking to the entirety of the policies to determine who should bear the costs of indemnification and defense. (*Illinois Emcasco Insurance Co. v. Continental Casualty Co.* (1985), 139 Ill. App. 3d 130, 487 N.E.2d 110.) That case is distinguishable insofar as it involved the "unique and special coverage" of an umbrella policy. (*Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133, 487 N.E.2d at 112.) Nonetheless, even if the trial court had taken the *Emcasco* approach, the record would support the court's decision. After all, an examination of the entire General policy must necessarily include an examination of General's "other insurance" clause. Home has failed to point to any portion of the General policy aside from the "other insurance" clause which indicates that the General policy should be construed as primary insurance where Home's policy applies. Thus, given the record in this case, Home has failed to show that the trial court abused its discretion.

The Illinois cases upon which Home relies are inapposite. *Zurich Insurance Co.* (145 Ill. App. 3d 175, 494 N.E.2d 634) allowed in *dictum* that there may be apportionment between insurers, but the insurers referred to in that discussion were all primary insurers. (See *Zurich Insurance Co.*, 145 Ill. App. 3d at 199, 494 N.E.2d at 650.) Moreover, the trial court had reserved its ruling on that issue and we therefore professed no opinion about it. (*Zurich Insurance Co.*, 145 Ill. App. 3d at 200, 494 N.E.2d at 650-51.) Our refusal to order *pro rata* apportionment of defense costs was upheld on appeal to our supreme court. *Zurich Insurance Co.*, 118 Ill. 2d at 57, 514 N.E.2d at 165.

■ Home's reliance on Audit Bureau of Corrections v. ISLIC (Cir. Ct. Cook County, March 1987), No. 84—L—50052, is misplaced for at least three reasons. First, it is axiomatic that an unpublished decision of a trial court in another case does not bind this court in any way. Second, Home has failed to point to anything in the transcript regarding the language of the policies at issue in that case, making a comparison to the policies in this case all but impossible. Finally, the record reflects that the trial judge in Audit Bureau of Corrections,

who also presided over the present case, specifically stated on the last page of the transcript of the proceedings that he did not rule on the consequences of having two primary policies.

For all of the aforementioned reasons, Home has failed to demonstrate that the trial court erred in granting General's motion to dismiss. Consequently, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.