RHONE–POULENC, INC., a New York corporation, Plaintiff,

v.

INTERNATIONAL INSURANCE COMPANY, an Illinois corporation and International Surplus Lines Insurance Company, an Illinois corporation, Defendants.

INTERNATIONAL INSURANCE COMPANY, an Illinois corporation, Counterplaintiff,

v.

RHONE–POULENC, INC., a New York corporation; Stauffer Chemical Co., a Delaware corporation; Stauffer Management Co., a Delaware corporation; Zeneca, Inc., a Delaware corporation; and ICI Americas, Inc., a Delaware corporation, Counterdefendants.

No. 94 C 3303.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 19, 1995.

Gerald L. Angst, Eugene A. Schoon, Mary H. Lindsay, Sidley & Austin, Chicago, IL, Marc S. Mayerson, Thomas W. Mitchell, Covington & Burling, Washington, DC, Luke W. Mette, Zeneca, Inc., Wilmington, DE, for Rhone–Poulenc, Inc.

Sandra Young, Howard J. Fishman, Purcell & Wardrope, Chtd., Chicago, IL, Jill B. Berkeley, Joseph R. Lundy, Darren Mark Raven Van Puymbrouck, William Edward Meyer, Jr., Darren Van Puymbrouck, Schiff, Hardin & Waite, Chicago, IL, Christine C. Franklin, Thelen, Marrin, Johnson & Bridges, Los Angeles, CA, Karl D. Belgum, Gary L. Fontana, Thelin, Marrin, Johnson & Bridges, San Francisco, CA, for Intern. Ins. Co.

Sandra Young, D. Timothy McVey, Howard J. Fishman, Purcell & Wardrope, Chtd., Chicago, IL, for Intern. Surplus Lines Ins. Co.

Gerald L. Angst, Eugene A. Schoon, Mary H. Lindsay, Sidley & Austin, Chicago, IL, Marc S. Mayerson, Covington & Burling,

Washington, DC, for Stauffer Management Co., Zeneca, Inc., ICI Americas, Inc.

## MEMORANDUM OPINION AND ORDER

CONLON, Judge.

Rhone–Poulenc, Inc. ("Rhone–Poulenc") sues International Insurance Company ("International") and International Surplus Lines Insurance Company ("Surplus") for breach of contract and a declaration of insurance coverage obligations in connection with five contaminated Rhone–Poulenc sites in Delaware, Massachusetts, New Jersey, and New York. Jurisdiction is based on diversity of citizenship. On December 19, 1994, this court granted International's motion to dismiss for failure to join necessary and indispensable parties. Judgment was entered December 27, 1994. Fed.R.Civ.P. 12(b)(7); Fed.R.Civ.P. 19. Rhone–Poulenc moves for reconsideration of the December 27, 1994 judgment. Fed.R.Civ.P. 59(e).

### BACKGROUND

Rhone–Poulenc is a New York corporation with its principal place of business in New Jersey. Rhone–Poulenc is the corporate successor to Stauffer Chemical Company ("Stauffer"). In the early 1980's, Stauffer carried several comprehensive general liability ("CGL") insurance policies. Stauffer's CGL insurers included National Union Fire Insurance Company ("National Union") and Home Insurance Company ("Home"). Home and National Union are New York corporations and are non-diverse with Rhone–Poulenc. Rhone–Poulenc has not named National Union or Home as defendants in the present suit.

During some of the same periods that Stauffer carried CGL policies, defendant International issued Stauffer two Environmental Impairment Liability ("EIL") policies. The first policy covered the period from July 15, 1981 to August 1, 1982. The second policy covered the period August 1, 1982 to August 1, 1983. Surplus issued Stauffer an excess-layer EIL policy covering the period September 4, 1981 to August 1, 1982. The Surplus policy is warranted to the same terms and conditions as the International policy except for the premium and liability limits. Rhone–Poulenc incurred environmental liability at five sites in Delaware, Massachusetts, New Jersey, and New York. Rhone–Poulenc alleges that it submitted claims to International, but that International refuses to indemnify Rhone–Poulenc. Rhone–Poulenc also believes that Surplus will deny coverage under its excess policy. As a result, Rhone–Poulenc sues International for breach of contract and seeks a declaration of the coverage obligations of both International and Surplus.

International's policy contains an excess clause stating that "no liability" shall attach under the International policy for expenses or losses recoverable by Rhone–Poulenc under any other insurance except as regards any excess over the amounts collectible under such other insurance. International represented, without objection from Rhone–Poulenc, that several CGL policies cover Rhone–Poulenc's environmental liability. These include policies issued by Home and National Union. International moved to dismiss for failure to join necessary and indispensable parties. The court held that the excess clause was an enforceable policy term. As a result, the court found that any declaration of International's obligations first required a determination of whether the CGL policies covered the loss, the extent of the loss, and the coverage limits of applicable CGL policies. Rhone–Poulenc did not join any CGL insurers in its suit against International and Surplus. Rhone–Poulenc cannot join Home and National Union because joinder would destroy diversity. Because Rhone–Poulenc's relief required a construction of the absent CGL insurers' policies, the court held under well-established case law that the CGL insurers were necessary and indispensable parties. Accordingly, the court dismissed the action.

### DISCUSSION

#### I. Legal Standards

Rhone–Poulenc moves for reconsideration of the December 27th judgment. Motions for reconsideration serve a narrow purpose. The rulings of a district court "are

not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 (N.D.Ill.1988). A motion for reconsideration will be granted only to correct manifest errors of law or to present newly discovered evidence. *Lewis v. Hermann,* 783 F.Supp. 1131, 1132 (N.D.Ill.1991) (citing *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985)). The motion is not a vehicle to introduce new evidence or legal theories that could have been raised in the original motion. *Id.* Rather, a motion for reconsideration is appropriate only when "the Court has patently misunderstood a party ... or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990).

■ The court dismissed this action pursuant to Rule 19. Under Rule 19, the court must first determine whether any absent parties shall be joined to the action (a "necessary" party). A party shall be joined if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. *See* Fed.R.Civ.P. 19(a). If one of these criteria is met, the court should join the absent party if feasible. *See Burger King Corp. v. American National Bank & Trust Co.,* 119 F.R.D. 672, 674 (N.D.Ill.1988). If an absent party cannot be joined, the court must determine whether, in equity and good conscience, the action may proceed without the party. If the court finds that the action cannot proceed without the absent party, the party is deemed "indispensable," and the action is dismissed. *See* Fed.R.Civ.P. 19(b); *Eljer Indus. v. Aetna Cas. & Sur. Co.,* 1994 U.S.Dist. Lexis 6167 (N.D.Ill.1994).

■ It is well-settled that primary or underlying insurers are necessary and indispensable parties under Rule 19 in a coverage lawsuit brought by an insured against its excess or contingent insurers. *See, e.g., Shell Oil Co. v. Aetna Cas. & Surety Co.,* 158 F.R.D. 395 (N.D.Ill.1994); *Eljer,* 1994 U.S.Dist. Lexis 6167, \*8; *Schlumberger Indus. v. National Surety Corp.,* 36 F.3d 1274 (4th Cir.1994); *Littleton v. Commercial Union Assurance Cos.,* 133 F.R.D. 159 (D.Colo. 1990); *Witco Corp. v. Travelers Indemnity Co.,* No. 93–4709, slip. op., 1994 WL 706076 (D.N.J. April 6, 1994). The rationale for this rule is that any declaration of the excess insurer's coverage liability necessarily depends on whether and to what extent the primary insurer covers the loss. The declaration of the excess insurer's obligations requires a construction of the terms of an absent insurer's primary policy, a process that may prejudice the absent insurer as a practical matter and expose all parties to inconsistent obligations. *See* December 19, 1994 Memorandum Opinion at 19–27, 1994 WL 714555. Rhone–Poulenc does not dispute that this rule is correct; Rhone–Poulenc accepts that the CGL insurers are necessary and indispensable if International can be considered an excess insurer vis-a-vis its insured, Rhone–Poulenc. *See* Rhone–Poulenc Mot.Recon. at 3.

■ Rhone–Poulenc attempts to distinguish between a "true" excess policy and a generic excess policy. Rule 19 analysis does not turn on labels. The effect of International's policy is the important issue. If construction of an absent insurer's primary policy is necessary to determine International's liability—that is, if International's liability may be contingent or dependent on whether an absent insurer's policy applies—the action should not proceed without the absent insurer.

## II. *International's Excess "Other Insurance" Clause* [1]

Rhone–Poulenc takes issue with the court's conclusion that International could operate as an excess insurer over primary CGL in-

---

1. The parties agree that Illinois law governs in- terpretation of the insurance contract.

surance as a result of the excess clause in International's policy. Rhone–Poulenc considers the CGL policies and the International policy to be primary coverage. Rhone–Poulenc asserts that all primary insurers are jointly and severally liable to an insured, and that an insured may recover in full from whichever primary insurer that it chooses. Although Rhone–Poulenc concedes that an excess clause may make International's insurance excess to the CGL insurance, Rhone–Poulenc argues that the clause only applies in a contribution action among insurers and has no application vis-a-vis an insured such as Rhone–Poulenc. Alternatively, Rhone–Poulenc appears to contend that an insurer made excess by operation of an excess clause somehow has attenuated excess rights for Rule 19 purposes compared to an insurer made excess by a policy that specifies the primary insurance it will follow. Rhone–Poulenc has not cited authority that supports these propositions.

█ The relationship between an insured and its insurer is governed by the insurance contract. Michael M. Marick, *Excess Insurance: An Overview of General Principles and Current Issues,* 24 Tort & Ins.L.J. 715, 719 (1989). The insurance contract between Rhone–Poulenc and International contains the following term ("Condition 8"):

> This policy shall not be called upon in contribution and no liability shall attach hereunder for any injury, loss, damage, costs, or expenses recoverable under any other insurance whether primary or excess inuring to the benefit of the Insured except as regards any excess over and above the amounts collectible under such other insurance; provided always that this clause shall not apply to any policy that is specifically arranged by the Insured to cover the limits in excess of those stated in this Policy. Nothing herein shall be construed to make this Policy subject to the terms, conditions, and limitations of any other insurance.

Def.Mot.Dis.Ex. A, Condition 8.

Rhone–Poulenc contends that Condition 8 is an "other insurance" clause and that "other insurance" clauses do not affect the insured's right to recover from the insurer. Rhone–Poulenc is in error.

█ There are three types of "other insurance" clauses—*pro rata,* excess, and escape. *Pro rata* provisions allocate liability between concurrent policies based upon the percentage of coverage each policy bears to the net amount of coverage under all applicable policies. Excess insurance "kicks in" to provide additional coverage once the policy limits of other available insurance are exhausted. Escape clauses attempt to absolve the insurer from all liability if other coverage is available. *See Institute for Shipboard Educ. v. CIGNA Worldwide Ins. Co.,* 22 F.3d 414, 419 (2d Cir.1994) (quoting *Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d 163, 166 (3d Cir.1987)); *see Home Indemnity Co. v. General Accident Ins. Co.,* 213 Ill. App.3d 319, 157 Ill.Dec. 498, 500, 572 N.E.2d 962, 964 (1991). The phrase "excess over and above the amounts collectible under such other insurance" is standard excess insurance clause language. *See Northbrook Property & Cas. Ins. Co. v. U.S. Fidelity & Guaranty Co.,* 150 Ill.App.3d 479, 103 Ill.Dec. 500, 502, 501 N.E.2d 817, 819 (1986); *see also Couch on Insurance 2d* §§ 62:48, 62:49, 62:68. Thus, International's policy contains an excess clause as one of its terms.

█ International's excess clause makes International an excess insurer if other insurance covers the same environmental liability. The fact that International's policy does not specify an underlying policy is irrelevant.[2] *See, e.g., Grant v. North River Ins. Co.,* 453 F.Supp. 1361, 1368 (N.D.Ind.1978); *Home Indem. Co.,* 157 Ill.Dec. at 500, 572 N.E.2d at 964; *United States Gypsum Co. v. Admiral Ins. Co.,* 268 Ill.App.3d 598, 205 Ill.Dec. 619, 643 N.E.2d 1226 (1994) (discussed in detail *infra* at p. 16.) Excess insurance may arise in one of three ways. First, excess insurance may arise if an insurer's policy states that it is excess insurance

**2.** Although Rhone–Poulenc argues that a policy cannot be excess *vis-a-vis* an insured unless it follows-form (a "true" excess policy), Rhone– Poulenc offers no authority to support this contention. The argument is contrary to Illinois law. *See infra* p. 1177.

to a specific underlying policy. This is known as a "follow-form" excess policy. Excess insurance may also arise as the result of an umbrella policy. Umbrella policies usually follow-form and provide broader, gap-filling protection than is provided in the underlying insurance. Finally, excess insurance may arise by "coincidence." Insurance is excess by "coincidence" where interpretation of two "other insurance" clauses renders one policy excess. See Marick, *supra* at 717–19. Contrary to Rhone–Poulenc's contention, excess status is *not* reserved for those insurers who write follow-form policies or issue policies "in reliance" on other, specified insurance. Illinois courts recognize that "excess coverage may arise not only by drafting a policy which, on its face, provides excess coverage, but also may arise by 'coincidence,' where, as here, the interpretation of two 'other insurance' clauses renders one policy excess." *Home Indem. Co.*, 157 Ill.Dec. at 500, 572 N.E.2d at 964. International's putative excess status arises by coincidence.

 Excess "other insurance" clauses are contract terms and are enforced accordingly. The general rule is that "an insurer may validly stipulate that in the event of other insurance covering the same loss as that which it covers, it shall operate only as an excess insurer." 16 *Couch on Insurance 2d* § 62:68 (1983). Illinois courts routinely determine whether a policy provides primary or excess coverage by reference to the "other insurance" clauses of the policies. *See, e.g., Putnam v. New Amsterdam Cas. Co.*, 48 Ill.2d 71, 269 N.E.2d 97, 101 (1970); *Home Indem. Co.*, 157 Ill.Dec. at 500, 572 N.E.2d at 964; *Deerfield Management Co. v. Ohio Farmers Ins. Co.*, 174 Ill.App.3d 837, 124 Ill.Dec. 423, 428, 529 N.E.2d 243, 248 (1988); *Honeywell, Inc. v. American Motorists Ins. Co.*, 109 Ill.App.3d 955, 65 Ill.Dec. 435, 438, 441 N.E.2d 348, 351 (1982); *Occidental Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 19 Ill.App.3d 265, 311 N.E.2d 330, 335 (1974); *Farmer's Auto. Ins. Ass'n v. Iowa Mut. Ins. Co.*, 77 Ill.App.2d 172, 221 N.E.2d 795, 797 (1966); *Fireman's Fund Indem. Co. v. Freeport Ins. Co.*, 30 Ill.App.2d 69, 173 N.E.2d 543, 544 (1961).

 The protections of excess insurance do not begin until those of the primary policy end; all primary insurance must be exhausted before liability is triggered on the excess insurance, regardless of how the excess insurance is created. *See, e.g., Home Indem. Co.*, 157 Ill.Dec. at 499, 572 N.E.2d at 963; *Aetna Cas. & Sur. Co. v. Chicago Ins. Co.*, 994 F.2d 1254, 1259 (7th Cir.1993). When an excess clause is given effect, the insurer is not liable for any part of the loss or damage covered by other insurance except for the amount of loss or damage in excess of the coverage provided by the other policy. 16 *Couch on Insurance 2d* §§ 62:48, 62:49 (1983); *Zurich Ins. Co. v. Heil Co.*, 815 F.2d 1122, 1124 (7th Cir.1987); *Siligato v. Welch*, 607 F.Supp. 743, 747 (D.Conn.1985).

For example, in *Home Indemnity Co.*, plaintiffs sued an architectural firm for personal injuries arising out of a design flaw. The firm was insured by Home under a comprehensive general liability policy and by General under a professional liability policy, both of which covered the claims. Home's policy contained a *pro rata* "other insurance" clause. General's policy contained an excess "other insurance" clause. Although conceding that General was secondary for indemnification purposes, Home argued that General's excess "other insurance" clause did not excuse General from a *pro rata* share of the insured's defense costs because the duty to defend is broader than the duty to indemnify. The court rejected this argument, finding that General's excess "other insurance" clause made General an excess insurer in all respects. *See Home Indem. Co.*, 157 Ill.Dec. at 500, 572 N.E.2d at 964.

A similar result obtained in *Deerfield Management Company*. There, a fire occurred in the building that Deerfield managed. Deerfield was insured by Unigard and was an additional insured under a policy issued by Ohio to the lessee that caused the fire. The Ohio policy contained an excess "other insurance" clause. Unigard argued that Ohio should be the primary policy because Deerfield and the lessee intended for Ohio to be the primary policy. Because the "other insurance" clause was unambiguous, the court rejected this argument and deemed

Ohio an excess insurer. *Deerfield Management Co.*, 124 Ill.Dec. at 428, 529 N.E.2d at 248.

■ These tenets apply to this case. International and Rhone–Poulenc are both sophisticated concerns. International issued Rhone–Poulenc an insurance policy for environmental liability. The policy contained an excess "other insurance" clause. The clause states that International's EIL insurance is excess to the amounts collectible under any other insurance that covers the loss. Rhone–Poulenc has not disputed that several CGL policies probably cover the environmental liability. Rhone–Poulenc has not contended that the CGL insurance is invalid or uncollectible. Rhone–Poulenc has not argued that the CGL policies contain any "mutually repugnant" other insurance clause. Under Illinois law, the court must conclude that Rhone–Poulenc and International contracted to make International an excess insurer if other insurance covers a loss. Apparently there is no dispute that several other CGL policies will probably cover the loss.[3] Thus, there is a real possibility that International's coverage obligations will be contingent on exhaustion of the underlying CGL insurance. Accordingly, any declaration of International's coverage obligations to Rhone–Poulenc will require construction of the policies of the absent CGL insurers to determine whether and to what extent they cover the losses. Rule 19 does not allow an insured to sue an insurer where the insurer's liability is contingent or dependent on a construction of another insurer's policies and that insurer is not joined. *See, e.g., Eljer Indus. v. Aetna Cas. & Sur. Co.*, 1994 U.S.Dist. Lexis 6167 (N.D.Ill.1994).

### III. The Effect Of An "Other Insurance" Clause

■ Rhone–Poulenc's central argument is that an "other insurance" clause does not affect an insurer's obligations to its insured. Rhone–Poulenc relies for support on a single

sentence in *Zurich Ins. Co. v. Northbrook Excess & Surplus Ins. Co.*, 145 Ill.App.3d 175, 98 Ill.Dec. 512, 528, 494 N.E.2d 634, 650 (1986). *Zurich* states that " 'other insurance' provisions do not affect the insurer's duty to the insured." Rhone–Poulenc's argument is without merit. "Other insurance" provisions are terms of the insurance contract between the insured and the insurer. As discussed above, there are three types of "other insurance" clauses—*pro rata*, excess, and escape. The "other insurance" provision in *Zurich* was a *pro rata* clause. *Zurich*, 98 Ill.Dec. at 528, 494 N.E.2d at 650. *Pro rata* insurance policies are primary policies triggered upon occurrence of the event; indeed, by their very terms, *pro rata* "other insurance" provisions are not triggered until the policy itself is triggered. Because coverage under the policy is triggered, *pro rata* insurers must honor their contract with the insured and indemnify for the full amount of the policy, seeking contribution from insurers on the same level pursuant to the *pro rata* clause only after the insured is paid. *See Keene Corp. v. Insurance Co. of North Am.*, 667 F.2d 1034, 1050 (D.C.Cir.1981); 6 John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 3905 (Rev. vol. 1972).

■ Excess clauses are different. Excess insurance "kicks in" only after underlying insurance is exhausted. Excess policies, unlike *pro rata* policies, are not automatically triggered by an event; they are not triggered until underlying insurance is exhausted. By the terms of the policy, an insured is not entitled to recover from an excess insurer until underlying insurance is exhausted. Indeed, the court in *Home Indemnity Company* explicitly distinguished *Zurich* because the *pro rata* insurers in *Zurich* "were all primary insurers." *Home Indem. Co.*, 157 Ill.Dec. at 501, 572 N.E.2d at 965. Accordingly, *Zurich* is inapposite and affords Rhone–Poulenc no support.

In its opposition to the original motion to dismiss, Rhone–Poulenc cited several cases for the proposition that an "other insurance"

---

**3.** In a contribution context, a California state court has determined that International's insurance for a relevant loss is excess to the CGL policy provided by Travelers Insurance Company, suggesting that the Travelers policy covers

the loss. *See Montrose Chemical Corp. v. Canadian Universal Ins. Co.*, No. 594149, slip op. at 2 (Cal.Super.Ct. Aug. 23, 1991) (attached as Ex. H to International's motion to dismiss).

clause in a contract sued upon does not make the other insurers at the same level necessary and indispensable parties. *See Littleton v. Commercial Union Assurance Cos.,* 133 F.R.D. 159 (D.Colo.1990); *Brinco Mining Ltd. v. Federal Ins. Co.,* 552 F.Supp. 1233 (D.D.C.1982); *Special Jet Servs. v. Federal Ins. Co.,* 83 F.R.D. 596 (W.D.Pa.1979). As discussed in the December 19 opinion, all of these cases involve *pro rata* "other insurance" clauses, thereby making coverage contingent on the triggering event, not on the exhaustion of underlying insurance. *See* December 19 Opinion at 11–15. Moreover, the court observed that even if International's policy contained a *pro rata* clause or International was in an otherwise *pro rata* situation with the CGL insurers (as in the case of "mutually repugnant" excess clauses), the other *pro rata* insurers would be necessary and indispensable parties under governing Seventh Circuit precedent. *See Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assurance Co.,* 417 F.2d 1113 (7th Cir.1969).[4] Even if Rhone–Poulenc's authority applied to this case, a significant question exists as to whether that authority would have any force in the Seventh Circuit.

■■■■■■ In any event, Illinois case law supports the conclusion that an insured may not recover from a primary insurer whose excess "other insurance" clause is given effect until the insured first taps and exhausts the underlying insurance. In *Honeywell, Inc. v. American Motorists Ins. Co.,* 109 Ill.App.3d 955, 65 Ill.Dec. 435, 441 N.E.2d 348 (1982), Hartford, a primary insurer, covered and paid its insured's loss. Hartford

sued American under Hartford's subrogation rights to recover the amount of the judgment. American's policy contained an "other insurance" clause: American's insurance was primary except if the loss were covered by other valid and collectible insurance, in which case American's insurance would be excess. *Honeywell,* 65 Ill.Dec. at 436, 441 N.E.2d at 349. American was not liable for the loss because its excess "other insurance" clause made it an excess insurer of the loss. *Id.* 65 Ill.Dec. at 438, 441 N.E.2d at 351. The fact that Hartford pursued recovery from American as a subrogee of its insured is important. A subrogee steps into the shoes of the one whose claim it has covered, and may enforce the rights of the latter. *Aetna Cas. & Sur. Co. v. Chicago Ins. Co.,* 994 F.2d 1254, 1257 (7th Cir.1993). Thus, the *Honeywell* court effectively held that the insured could not recover from American because of American's excess "other insurance" clause.

Finally, Rhone–Poulenc's argument is directly foreclosed by the recent decision in *United States Gypsum Company v. Admiral Insurance Company,* 268 Ill.App.3d 598, 205 Ill.Dec. 619, 643 N.E.2d 1226 (1994). In *Gypsum,* an insured filed a declaratory action seeking insurance coverage for asbestos liability against various primary and excess insurers who had issued general liability policies to the insured from the 1930s through 1984. The court adopted a "continuous trigger" theory, allowing coverage under several different policy periods to be triggered by the same claim. *Gypsum,* 205 Ill.Dec. at 649–50, 643 N.E.2d at 1256–57. The excess policies stated that they would provide coverage after a particular underlying policy was

---

**4.** Contrary to Rhone–Poulenc's suggestion, there is no indication that the policies in *Evergreen* were issued "in specific reliance" on one another. The policies in *Evergreen* were simply primary policies with *pro rata* "other insurance" clauses, the same type of policy at issue in all cases Rhone–Poulenc cites. *Evergreen* held that all *pro rata* insurers were necessary and indispensable parties under Rule 19 in a suit by the insured against any one of them. There is *dicta* in *Casualty Indemnity Exchange v. Village of Crete,* 731 F.2d 457, 461–62 (7th Cir.1984), that appears to contradict *Evergreen.* The court in *Village of Crete* did not specify the type of "other insurance" clause that was at issue. *See Village of Crete,* 731 F.2d at 460–61. Moreover, cover-

age liability in *Village of Crete* did not turn on similar issues; Hartford did not deny coverage and there is no indication that Hartford failed to receive timely notice from its insured. *See id.* at 458. In contrast, the liability of the six insurers in *Evergreen* depended on resolution of the same issues of fact and law. *See Evergreen,* 417 F.2d at 1115; *see also Littleton,* 133 F.R.D. at 161; *Brinco Mining,* 552 F.Supp. at 1236. Finally, the litigation in *Village of Crete* already had occurred and future litigation was speculative, thereby militating against remand. *See* Rule 19(a)(1), official comment. *Evergreen* was dismissed before litigation occurred. *See Village of Crete,* 731 F.2d at 461 n. 3; *Evergreen,* 417 F.2d at 1115.

exhausted. However, the excess policies also contained a generic excess "other insurance" clause, providing that the policy would be excess if any other insurance covered a loss. *Id.* 205 Ill.Dec. at 654, 643 N.E.2d at 1261. The insured wanted to tap an excess policy after the particular underlying policy specified in the excess policy had been exhausted, ignoring the excess "other insurance" clause. Much like Rhone–Poulenc, the insured argued that "each excess insurer has an independent obligation under its policy" and must provide coverage "once the underlying primary policy particular to the excess policy in question is exhausted regardless of whether the insurer has concurrent primary or excess obligations." *Id.*

The *Gypsum* court disagreed because the excess policies also contained a generic "other insurance" clause that "unequivocally sets forth that the excess insurer will not contribute 'if other valid and collectible insurance with any other insurer is available to the insured.'" *Id.* 205 Ill.Dec. at 654, 643 N.E.2d at 1261. The court found that the clause made the policy an excess policy to *all* triggered primary policies, regardless of whether the primary policies were specified or extended over many policy periods.[5] *Id.* Thus, the court held that a "plain reading of the 'other insurance' provision ... requires Gypsum to exhaust all triggered primary insurance before pursuing coverage" under the excess policies. *Id.*

■ Rhone–Poulenc cannot prevail in light of *Gypsum. Gypsum* explicitly holds that an excess "other insurance" clause applies *vis-a-vis* an insured and prevents the insured from recovering under the policy until all other applicable insurance is exhausted. *See also Continental Casualty Co. v. Armstrong World Indust.,* 776 F.Supp. 1296, 1301 (N.D.Ill.1991); *Iolab Corp. v. Seaboard Sur. Co.,* 15 F.3d 1500, 1504 (9th Cir.1994). If other insurance covers the environmental liability, Rhone–Poulenc will not be able to recover from International until Rhone–Poulenc exhausts the other insurance.

Rhone–Poulenc attempts to distinguish *Gypsum. See* Rhone–Poulenc's Br.Opp. to Mot.Dis. at 7 n. 5. First, Rhone–Poulenc contends that *Gypsum* is distinguishable because the "other insurance" clause there was contained in a policy that was already excess to one particular underlying policy. This argument is unpersuasive. *Gypsum* held that the policy was made excess to all unspecified primary policies (*after* exhaustion of the specified primary policy) by operation of the generic "other insurance" clause. *See Gypsum,* 205 Ill.Dec. at 655, 643 N.E.2d at 1262. The fact that the policy originally was a follow-form excess policy for one specified policy was irrelevant. Second, Rhone–Poulenc appears to argue that this case involves general liability policies and an environmental liability policy, while all the policies in *Gypsum* were general liability. This is a distinction without a difference. When evaluating the effect of an excess "other insurance" clause, the fact that the loss is covered by slightly different policies is irrelevant. *See, e.g., Home Indem. Co. v. General Accident Ins. Co.,* 213 Ill.App.3d 319, 157 Ill.Dec. 498, 499–500, 572 N.E.2d 962, 963–64 (1991) (excess "other insurance" clause operated to make professional liability insurance excess to general liability insurance where both policies covered loss arising out of architects' professional negligence).

## IV. *Summary*

■ Rhone–Poulenc is a sophisticated business. It negotiated an insurance policy with International that contained an excess clause. The plain language and legal effect of that clause is to make International's insurance excess to any other insurance that covers the loss. Rhone–Poulenc does not dispute that its CGL insurance covers the loss. Determination of International's liability, even if International is ultimately held not to be an excess insurer, requires construction

---

5. Despite the plain language of International's "other insurance" clause, Rhone–Poulenc suggests that it would be unfair to make Rhone–Poulenc exhaust several other policies before tapping the International insurance. *Gypsum* did not find troubling the fact that the insured there would be required to exhaust triggered primary policies in effect from the 1930s through 1984 before tapping a single policy with an excess "other insurance" clause. *Id.* 205 Ill.Dec. at 654, 643 N.E.2d at 1261.

of the absent insurer's CGL policies. Rhone–Poulenc recognizes that Rule 19 mandates dismissal if construction of an absent insurer's policy is necessary to provide Rhone–Poulenc with a declaration of International's coverage liabilities. Accordingly, Rule 19 requires that this case be dismissed because two of the absent insurers cannot be joined. Rhone–Poulenc is not prejudiced by the decision. Rhone–Poulenc has adequate state forums to seek indemnity for its losses from all of its insurers in one action. *See* December 19, 1994 Opinion at 26–27.

## *CONCLUSION*

Rhone–Poulenc's Rule 59(e) motion for reconsideration is denied.